FOSLER LAW GROUP, INC.
JAMES E. FOSLER
737 West 5th Avenue, Suite 205
Anchorage, AK  99501
Telephone:  907/277-1557
907/277-1657 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITE HERE NATIONAL RETIREMENT FUND, LONDON PENSIONS FUND AUTHORITY and JEFFREY PICKETT, Derivatively on Behalf of BP P.L.C., BP AMERICA, INC., BP OIL CO. INC. and BP EXPLORATION (ALASKA) INC., <br><br> Plaintiffs, <br><br> vs. <br><br> THE LORD JOHN BROWNE OF MADINGLEY, et al., <br><br> Defendants, <br><br> – and – <br><br> BP P.L.C., et al., <br><br> Nominal Defendants. | No. 3:06-cv-00239-RRB <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND |

**Page**

I. NATURE AND STATE OF THE PROCEEDINGS............................................................1

II. THE COMPLAINT'S ALLEGATIONS ....................................................................1

III. SUMMARY OF THE ARGUMENT ......................................................................3

    A. There Is No Diversity of Citizenship .......................................................3

        1. Plaintiff UNITE HERE and Eight Undisputedly Properly Joined Individual Defendants Are Citizens of Illinois, Georgia and Florida, as Are BP America and BP Oil ..........................................5

        2. Plaintiff London Pensions Fund Authority and 18 Undisputedly Properly Joined Defendants Are Citizens of the U.K., as Is BP P.l.c. .....................................................................6

        3. Plaintiff Jeffrey Pickett and Three Properly Joined Alaska Defendants Are Citizens of Alaska, as Is BPX...........................7

    B. Joinder of the Alaska Defendants Was Not Fraudulent...........................7

        1. The Alaska Defendants Allegedly Played a Substantial Role in the Wrongdoing ...........................................................7

        2. The Allegations Against the Alaska Defendants Are Clearly "Potentially" Valid.................................................................11

        3. Once a "Potentially" Valid Claim Against Any Alaska Defendant Is Identified, Remand Is Mandated.............................16

        4. Because the Alaska Defendants Are Alleged to Have Engaged in a Concerted Action with the Other Defendants, They Cannot Be Viewed as Fraudulently Joined.................................17

    C. Removal Cannot Be Justified by a Ruling on a Defense Which Is Common to All Defendants, *i.e.*, Failure to State a Claim Upon Which Relief Can Be Granted ..................................................................17

    D. The Removal Petition Was Untimely Filed............................................18

    E. Removal Serves No Logical Purpose as a Nearly Identical, Non-Removable Derivative Action Involving the Same Claims and Defendants Remains in, and Will Be Prosecuted in, Alaska State Court ................................19

IV. BECAUSE FEDERAL SUBJECT MATTER JURISDICTION DOES NOT EXIST, THE CASE MUST BE REMANDED ..............................................20

A.    The Court Must Strictly Construe the Removal and Jurisdiction Statutes in Favor of Remand...................................................................................................20

B.    This Court Lacks Subject Matter Jurisdiction Because Diversity of Citizenship Is Absent and the Action Alleges Only State Law Claims................21

      1.    As Plaintiffs UNITE HERE and BP America and BP Oil (Which Must Be Realigned as Parties-Plaintiffs for Diversity Purposes) and Eight Defendants, Which No-One Disputes Were Properly Joined, Are Citizens of Illinois, Georgia and Florida, Diversity of Citizenship Is Lacking ..............................................................................22

      2.    As Plaintiff London Pensions Fund and Nominal Party BP P.l.c. (Which Must Be Realigned as a Party-Plaintiff for Diversity Purposes) and 18 Defendants, Which No One Disputes Were Properly Joined, Are Citizens of the U.K., Diversity of Citizenship Is Lacking....................................................................................................23

      3.    As Plaintiff Jeffrey Pickett and Nominal Party BPX (Which Must Be Realigned as a Party-Plaintiff for Diversity Purposes) Are Alaska Citizens, as Are Three Properly Joined Individual Defendants, Diversity of Citizenship Is Lacking.......................................24

C.    Defendants Cannot Meet Their Heavy Burden of Demonstrating Fraudulent Joinder of the Alaska Resident Defendants by Clear and Convincing Evidence ...............................................................................................24

      1.    Defendants' Burden of Proving Fraudulent Joinder Is a Heavy One ........25

      2.    Defendants Cannot Prove by Clear and Convincing Evidence that Plaintiffs Cannot State a Potentially Valid Claim Against Defendants Marshall, McCleary or Phillips................................................29

            a.    This Inquiry Ends Once It Is Determined Plaintiffs Have Stated a "Potentially Valid Claim" Against Any Alaska Defendant ....................................................................................30

            b.    Plaintiffs Have Stated a "Potentially Valid Claim" Under the Law of Whichever Jurisdiction Is Ultimately Applied ...........32

            c.    The Complaint Alleges a Concerted Action Involving All Defendants ....................................................................................41

            d.    Though Not Required, Plaintiffs Could Plead Double, Triple or Quadruple Derivative Claims ..........................................42

3.  Defendants' Removal Improperly Attempts to Put at Issue the Ultimate Liability of All Defendants in Violation of the "Common Defense" Rule ............................................................44

4.  The Removal Was Untimely as It Came After Alaska Defendants Were Served ................................................................48

V.  REMOVAL SERVES NO LOGICAL PURPOSE AS A NEARLY IDENTICAL, NON-REMOVABLE DERIVATIVE ACTION MAKING THE SAME CLAIMS AGAINST THE SAME DEFENDANTS REMAINS PENDING IN, AND WILL BE PROSECUTED IN, ALASKA STATE COURT ........................................48

VI.  PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS ................................................................49

VII.  CONCLUSION................................................................50

Case 3:06-cv-00239-RRB   Document 37   Filed 11/22/06   Page 4 of 66

# TABLE OF AUTHORITIES

                                                                                                    **Page**

## CASES

*Alaska Airlines v. United Airlines*,
    902 F.2d 1400 (9th Cir. 1990) ...................................................................16, 27, 30, 32

*Alvest, Inc. v. Superior Oil Corp.*,
    398 P.2d 213 (Alaska 1965)......................................................................................37

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
    545 A.2d 1171 (Del. 1988) ...........................................................................11, 29, 38

*Anderson v. Home Ins. Co.*,
    724 F.2d 82 (8th Cir. 1983) .....................................................................................25

*Apelian v. United States Shoe Corp.*,
    664 F. Supp. 1370 (C.D. Cal. 1987) .....................................................................5, 19

*Archuleta v. Am. Airlines, Inc.*, No. CV 00-1286 MMM (SHx),
    2000 U.S. Dist. LEXIS 21076 (C.D. Cal. May 12, 2000) .................................27

*Aviall, Inc. v. Ryder Sys.*,
    913 F. Supp. 826 (S.D.N.Y. 1996), *aff'd*, 110 F.3d 892 (2d Cir. 1997) ............38

*B., Inc. v. Miller Brewing Co.*,
    663 F.2d 545 (5th Cir. 1981) ...................................................................................42

*Batchelder v. Nobuhiko Kawamoto*,
    147 F.3d 915 (9th Cir. 1998) .............................................................................40, 41

*Batoff v. State Farm Ins. Co.*,
    977 F.2d 848 (3d Cir. 1992)..............................................................................41, 42

*Boyer v. Snap-On Tools Corp.*,
    913 F.2d 108 (3d Cir. 1990)....................................................................................46

*Brazina v. Paul Revere Life Ins. Co.*,
    271 F. Supp. 2d 1163 (N.D. Cal. 2003) ................................................................47

*Brothers v. Fortis Ins. Co.*,
    2004 U.S. Dist. LEXIS 16358 (N.D. Cal. Aug. 11, 2004).............................16, 26

*Brown v. Tenney*,
    125 Ill. 2d 348 (Ill. 1988)........................................................................................43

*Brown v. UPS*, No. C05-1718 MJP,
2005 U.S. Dist. LEXIS 28281 (W.D. Wash. Nov. 10, 2005) ...........................................25

*Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.*,
24 Fed. Appx. 727 (9th Cir. 2001) ..................................................16, 25, 26, 43

*Carden v. Arkoma Assoc.*,
494 U.S. 185 (1990) ........................................................................20

*Carlin v. Brownfield*, No. 84AP-345,
1985 Ohio App. LEXIS 8141 (Ohio Ct. App. June 18, 1985) ...........................................41

*Caterpillar Inc. v. Lewis*,
519 U.S. 61 (1996) ........................................................................21

*Cheng v. Boeing Co.*,
708 F.2d 1406 (9th Cir. 1983) ........................................................................24

*Chesapeake & O.R. Co. v. Cockrell*,
232 U.S. 146 (1914) ..................................................26, 44, 45, 46

*Chicago, B.&Q. Ry. Co. v. Willard*,
220 U.S. 413 (1911) ........................................................................20

*City of Chicago v. Int'l Coll. of Surgeons*,
522 U.S. 156 (1997) ........................................................................20

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*,
423 F. Supp. 2d 348 (S.D.N.Y. 2006) ..................................................11, 12, 29, 30

*Cont'l Ins. Co. v. Ursin Seafoods, Inc.*,
No. 92-35023, 1992 U.S. App. LEXIS 25488 (9th Cir. Oct. 6, 1992) ...........................................16

*Davila v. Am. Home Prods. Corp.*, No. EP-03-CA-279(KC),
2004 U.S. Dist. LEXIS 4370 (W.D. Tex. Feb. 3, 2004) ...................................................47

*Dersch v. United Mine Workers of Am.*,
309 F. Supp. 395 (S.D. Ind. 1969) ........................................................................22

*Diaz v. Allstate Ins. Group*,
185 F.R.D. 581 (C.D. Cal. 1998) ........................................................................27

*Drenis v. Haligiannis*, No. 04 Civ. 9263 (RJH),
2006 U.S. Dist. LEXIS 68488 (S.D.N.Y. Sept. 25, 2006) ...........................................36

*Duffey v. Wheeler*,
820 F.2d 1161 (11th Cir. 1987) .................................................................23, 24

*Emrich v. Touche Ross & Co.*,
846 F.2d 1190 (9th Cir. 1988) ........................................................................20

*Evans v. Mut. of Omaha Ins. Co.*,
134 Fed. Appx. 194, 195 (9th Cir. 2005)............................................16, 27, 30

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992) ..........................................................................20

*Getty Oil Corp. v. Ins. Co. of N. Am.*,
841 F.2d 1254 (5th Cir. 1988) ........................................................................48

*Godsey v. Miller*,
9 Fed. Appx. 380, 382 (6th Cir. 2001)............................................................42

*Greene King plc v. Harlow Dist. Council*,
[2003] EWHC (Admin) 2852 (Eng.) ...............................................................39

*Grupo Dataflux v. Atlas Global Group, L.P.*,
541 U.S. 567 569 (2004)..................................................................................24

*Hart v. Wal-Mart Stores, Inc.*,
360 F.3d 674 (7th Cir. 2004) ..........................................................................49

*Hendricks v. Dynegy Power Mktg., Inc.*,
160 F. Supp. 2d 1155 (S.D. Cal. 2001)...........................................................21

*Huckaby v. Gans & Smith Ins. Agency, Inc.*,
293 F. Supp. 2d 715 (E.D. Tex. 2003)............................................................47

*Hurt v. Dow Chem. Co.*,
963 F.2d 1142 (8th Cir. 1992) ........................................................................48

*In re Digimarc Corp. Derivative Litig.*, No. 05-1324-HA,
2006 U.S. Dist. LEXIS 56134 (D. Or. Aug. 11, 2006)............................ *passim*

*In re New England Mut. Life Ins. Co. Sales Practices Litig.*,
324 F. Supp. 2d 288 (D. Mass. 2004) .............................................................47

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
171 Fed. Appx. 18, 19 (9th Cir. 2006)............................................................26

*In re Scott Acquisition Corp.*,
344 B.R. 283 (Bankr. D. Del. 2006) .................................................................39

*In re Simon*,
153 F.3d 991 (9th Cir. 1998) ............................................................................33

*In re Walt Disney Co. Derivative Litig.*,
906 A.2d 27 (Del. 2006) ............................................................................29, 30

*Ingram v. Bayer Corp.*,
166 Fed. Appx. 953 (9th Cir. 2006)..................................................................26

*Jerue v. Millett*,
66 P.3d 736 (Alaska 2003)..........................................................................10, 35

*Johnson v. Columbia Props. Anchorage, LP*,
437 F.3d 894 (9th Cir. 2006) ........................................................................5, 22

*Jones v. Republic Prods., Inc.*,
112 F.2d 672 (9th Cir. 1940) ......................................................................17, 41

*King v. Aventis Pasteur, Inc.*,
210 F. Supp. 2d 1201 (D. Or. 2002) .................................................................44

*Knutson v. Allis- Chalmers Corp.*,
358 F. Supp. 2d 983 (D. Nev. 2005)......................................................25, 28, 31

*Laduca v. Swirsky*, No. 02 C 8597,
2003 U.S. Dist. LEXIS 12823 (N.D. Ill. July 24, 2003)...................................39

*Lee v. Nesbitt*,
453 F.2d 1309 (9th Cir. 1971) ..........................................................................22

*Lewis v. Odell*,
503 F.2d 445 (2d Cir. 1974)........................................................................23, 24

*Lively v. Wild Oats Mkts., Inc.*,
456 F.3d 933 (9th Cir. 2006) ............................................................................19

*Local Union 598, Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.*,
846 F.2d 1213 (9th Cir.), *aff'd*, 488 U.S. 881 (1988)........................................................18

*Long v. Holland Am. Line Westours, Inc.*,
26 P.3d 430 (Alaska 2001)........................................................................32, 33

*M & R Inv. Co. v. Fitzsimmons*,
484 F. Supp. 1041 (D. Nev. 1980), *aff'd*, 685 F.2d 283 (1982)..........................22

*Mansfield Hardwood Lumber Co. v. Johnson*,
268 F.2d 317 (5th Cir. 1959) .........................................................................36

*Marathon Oil Co. v. Ruhrgas, A.G.*,
115 F.3d 315 (5th Cir. 1997) .........................................................................26

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005)........................................................................................49

*Martinez v. Cape Fox Corp.*,
113 P.3d 1226 (Alaska 2005).............................................................12, 29, 38

*Mayflower Hotel Stockholders Protective Comm. v. Mayflower Hotel Corp.*,
193 F.2d 666 (D.C. Cir. 1951) .......................................................................36

*Meidinger v. Koniag, Inc.*,
31 P.3d 77 (Alaska 2001).............................................................................37

*Mertens v. Kaiser Steel Ret. Plan*,
744 F. Supp. 917 (N.D. Cal. 1990), *aff'd*, 948 F.2d 1105 (9th Cir. 1991) ...............23, 24

*Moore v. Permanente Med. Group*,
981 F.2d 443 (9th Cir. 1992) ...................................................................49, 50

*Morris v. Princess Cruises, Inc.*,
236 F.3d 1061 (9th Cir. 2001) .......................................................................26

*Muller v. BP Exploration (Alaska)*,
923 P.2d 783 (Alaska 1996)............................................................................35

*N. Supply v. Curtiss-Wright Corp.*,
397 P.2d 1013 (Alaska 1965)..........................................................................35

*Nat'l Paint & Coatings Ass'n v. S. Coast Air Quality Mgmt. Dist.*,

Case 3:06-cv-00239-RRB   Document 37   Filed 11/22/06   Page 9 of 66

No. 04-056241, 2006 U.S. App. LEXIS 19128 (9th Cir. July 27, 2006) ..........................19

*Navarro Sav. Ass'n v. Lee*,
    446 U.S. 458 (1980)..................................................................................................22

*Nemazee v. Premier, Inc.*,
    232 F. Supp. 2d 172 (S.D.N.Y. 2002)........................................................................30

*Nerox Power Sys. v. M-B Contracting Co.*,
    54 P.3d 791 (Alaska 2002)...............................................................................39, 40

*Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*,
    20 F.3d 987 (9th Cir. 1994) ..............................................................5, 7, 23, 24

*Norlin Corp. v. Rooney, Pace, Inc.*,
    744 F.2d 255 (2d Cir. 1984)....................................................................................36

*Palmer G. Lewis Co. v. ARCO Chem. Co.*,
    904 P.2d 1221 (Alaska 1995)..................................................................................31

*Partco Group Ltd. v. Wragg and Scott*,
    [2002] EWCA (Civ) 594 (Eng.)...............................................................................11

*Paskvan v. Mesich*,
    455 P.2d 229 (Alaska 1969)....................................................................................38

*Phillips v. Allstate Ins. Co.*,
    702 F. Supp. 1466 (C.D. Cal. 1989) ........................................................................21

*Polar Int'l Brokerage Corp. v. Reeve*,
    187 F.R.D. 108 (S.D.N.Y. 1999) ........................................................11, 12, 29, 36

*Pullman Co. v. Jenkins*,
    305 U.S. 534 (1939)...............................................................................17, 25, 31

*Re Citybranch Group Ltd. v. Rackind*,
    [2004] EWCA (Civ) 815 (Eng.)...............................................................................12

*Republic W. Ins. Co. v. Int'l Ins. Co.*,
    765 F. Supp. 628 (N.D. Cal. 1991) ..........................................................................48

*Rezendes v. Dow Corning Corp.*,
    717 F. Supp. 1435 (E.D. Cal. 1989)........................................................................21

*Ritchey v. Upjohn Drug Co.*,
  139 F.3d 1313 (9th Cir. 1998) ...................................................................46, 47

*Ritchey v. Dement*,
  35 Fed. Appx. 647 (9th Cir. 2002)...................................................................47

*Roundtree v. Ching Feng Blinds Indus. Co., Ltd.*,
  393 F. Supp. 2d 942 (D. Alaska 2005) ...........................................................32

*Ruiz v. Blentech Corp.*,
  89 F.3d 320 (7th Cir. 1996) ............................................................................32

*S.A. Auto Lube v. Jiffy Lube Int'l*,
  842 F.2d 946 (7th Cir. 1988) ..........................................................................42

*Savage Arms v. W. Auto Supply Co.*,
  18 P.3d 49 (Alaska 2001)...........................................................................31, 32

*Scudder v. Int'l Air Serv. Co.*,
  No. 97-35445, 1998 U.S. App. LEXIS 21622 (9th Cir. Sept. 1, 1998) ............32

*Sessions v. Chrysler Corp.*,
  517 F.2d 759 (9th Cir. 1975) .....................................................................27, 28

*Shadie v. Aventis Pasteur, Inc.*,
  254 F. Supp. 2d 509 (M.D. Pa. 2003) .............................................................47

*Shamrock Oil & Gas Corp. v. Sheets*,
  313 U.S. 100 (1941)........................................................................................21

*Simpson v. Union Pac. R.R. Co.*,
  282 F. Supp. 2d 1151 (N.D. Cal. 2003) ................................................... *passim*

*Smallwood v. Ill. Cent. R.R. Co.*,
  385 F.3d 568 (5th Cir. 2004), *cert. denied*, 544 U.S. 992 (2005).........18, 44, 47

*Smith v. S. Pac. Co.*,
  187 F.2d 397 (9th Cir. 1951) ............................................................... *passim*

*Snow v. Ford Motor Co.*,
  561 F.2d 787 (9th Cir. 1977) ..........................................................................20

*Spencer v. United States Dist. Court*,
  393 F.3d 867 (9th Cir. 2004) ..........................................................................19

*State v. Jack,*
    125 P.3d 311 (Alaska 2005)..............................................................35

*Stephens v. Nat'l Distillers & Chem. Corp.*, No. 91 Civ. 2901 (JSM),
    1996 U.S. Dist. LEXIS 6915 (S.D.N.Y. May 21, 1996) ...........................35, 36

*Strawbridge v. Curtiss,*
    7 U.S. 267 (1806)..............................................................20

*W.R. Grace & Co. v. Cont'l Cas. Co.,*
    896 F.2d 865 (5th Cir. 1990) ................................................33

*Wenger v. W. Reserve Life Assurance Co.,*
    570 F. Supp. 8 (M.D. Tenn. 1983)..........................................21

*Wilson v. Republic Iron & Steel Co.,*
    257 U.S. 92 (1921) ..........................................................20

*Yniques v. Cabral,*
    985 F.2d 1031 (9th Cir. 1993) ............................................20

**STATUTES, RULES AND REGULATIONS**

28 U.S.C.
    §1332..............................................................20, 48
    §1441(a)..............................................................20
    §1441(b)..............................................20, 21, 27, 48
    §1447(c) ..............................................................1, 49, 50

Alaska Statutes
    §10.05.825(8)..............................................................35
    §10.06.435.............................................................. *passim*
    §10.06.450..............................................................11, 29, 37
    §10.06.450(b)..............................................................37
    §10.06.483..............................................................11, 29
    §10.06.483(e)..............................................................37
    §10.06.740..............................................................10, 20, 34, 37

N.Y. Bus. Corp. Law
    §626..............................................................36
    §1319(a)..............................................................36

## SECONDARY AUTHORITIES

Restatement (Second) of Conflicts of Laws (1971)
　　§145............................................................................................................32, 33
　　§302.................................................................................................................31
　　§309.................................................................................................................31

1 James Wm. Moore, *Moore's Federal Practice*
　　§2.04 (3d ed. 1997) ..........................................................................................18

16 James Wm. Moore, *Moore's Federal Practice*
　　§107.14 (3d ed. 2004) .......................................................................................25

5 Francis Beaufort Palmer, *Palmer's Company Law*
　　§8.501 (1998)....................................................................................................11

Erwin Chemerinsky, *Federal Jurisdiction*
　　§5.5 (4th ed. 2003) ...........................................................................................19

*Lea Brilmayer & Kathleen Paisley, Personal Jurisdiction and Substantive Legal*
　　*Relations: Corporations, Conspiracies, and Agency*, 74 Cal. L. Rev. 1 (1986)...............40

Plaintiffs submit this Memorandum of Points and Authorities in Support of their Motion to Remand this action back to the Superior Court for the State of Alaska ("Alaska State Court").

## I.  NATURE AND STATE OF THE PROCEEDINGS

This shareholders derivative action on behalf of BP p.l.c., BP America, Inc. ("BP America"), BP Oil Co. ("BP Oil") and BP Exploration (Alaska) Inc. ("BPX") (collectively, "BP" or the "Company") was filed in Alaska State Court on 10/2/06 against certain of BP's current and former directors and officers for intentional or negligent breach of fiduciary duty.[1]  The action is brought by three shareholders:  Jeffrey Pickett ("Pickett"), an individual who resides in Alaska; London Pensions Fund Authority ("London Pensions Fund"), a U.K. citizen and overseer of the pension monies of London's municipal employees; and UNITE HERE National Retirement Fund ("UNITE HERE"), overseer of the retirement savings of thousands of U.S. apparel and hotel workers. Collectively, the named plaintiffs own BP stock and ADRs worth over $50 million.  The suit, which alleged no federal claims and did not plead diversity of citizenship, was removed on 10/24/06 by BP America (joined by other defendants) under a "fraudulent joinder" theory.  Plaintiffs are moving to remand and, because the removal was improper, for costs and fees under 28 U.S.C. §1447(c).

## II.  THE COMPLAINT'S ALLEGATIONS

This shareholders derivative action is brought on behalf of BP, an international conglomerate of companies, the public holding company parent of which is the largest non-U.S.-based company listed on the NYSE.  ¶¶2, 22-28.[2]  BP is the largest oil and gas producer in the U.S. and the operator of Prudhoe Bay – the biggest U.S. oilfield.  ¶2.  It owns the second largest liquids pipeline company

---

[1]  On 10/9/06, plaintiffs filed an Amended Verified Shareholder Derivative Complaint for Intentional, Reckless or Negligent Breach of Fiduciary Duty and Corporate Waste (the "Complaint") which, along with the original complaint, were submitted with defendants' Notice of Removal of Action to the United States District Court for the District of Alaska ("Def's Not.").

[2]  Unless otherwise noted, all paragraph references ("¶_" or "¶¶_") are to the Complaint.

in the U.S.  It is the second largest refiner, fuels marketer and gasoline marketer in the U.S.  *Id*.
Defendants are all of the current – and certain former – BP directors, and current and former BP
America and BPX officers and directors who oversaw BP's U.S. operations.  ¶¶1, 29-69.

This action complains of defendants' breach of their fiduciary duties  to BP by causing or
permitting BP to violate the laws of the U.S. and several of its states relating to environmental
regulation and protection, worker and workplace safety and fair and honest trade practices.  ¶¶1, 4,
16, 75-140, 142, 147-156.  The Complaint details how BP's managers and directors, faced with
aging production and refining facilities and intense competition in its key markets, resorted to
improper and even illegal activities to cut costs and temporarily boost BP's reported results.  *Id*.
This included refusing to make, or curtailing, expenditures for necessary plant and equipment
inspections, maintenance and replacement for its refineries and pipelines, including facilities at
Prudhoe Bay, and engaging in unfair and illegal trade practices by manipulating the prices of
propane, unleaded gas and crude oil.  *Id*.  These imprudent and illegal actions had the desired effect,
*i.e.*, cutting BP's costs, while increasing its revenues and boosting its apparent profitability – in the
short term.  *Id*.  Since defendants had limited tenures in their positions at BP, this was their real
concern, not BP's long-term profitability or the long-term interests of the actual owners of BP, *i.e.*,
its public shareholders.  *Id*.  Defendants' imprudent and even unlawful actions had an inevitable
damaging impact on BP, its long-term future and its shareholder community.  *Id*.  Despite repeated
warnings and "red flags," defendants refused to stop or take action to correct or remedy the
dangerous conditions created by their conduct.  *Id*.  The damaging consequences of defendants'
misconduct have manifested themselves repeatedly:

- BP has consistently suffered major operating problems at the Prudhoe Bay oil
field, ***including the largest crude oil leak in the history of that field earlier
this year*** due to defective pipeline maintenance, curtailed inspection
programs, inadequate worker training procedures, and emergency response
plans and procedures.  This has resulted in numerous fines and penalties, an
unusually high number of employee injuries, a significant curtailment of field

production, employee dissatisfaction and morale problems, civil and criminal investigations, governmental directives forcing increased pipeline inspection and maintenance activities, and a horrible public relations black eye for BP. ¶¶4-8, 83-123.

- BP has suffered an unusually – and unacceptably – large number of accidents and worker injuries at BP's Texas City refinery, culminating in a huge 2005 explosion. The explosion caused over 15 deaths and over 170 injuries and shut down the plant. The explosion resulted from the failure to properly maintain the plant, the use of outmoded and ill-maintained equipment and inadequate training of workers. The explosion has resulted in a rash of civil suits, governmental investigations and the largest U.S. Occupational Safety and Health Administration fine in history due to BP's egregious and willful safety violations, and a horrible public relations black eye for BP exacerbated by revelations that similar failures and operating deficiencies plague other BP refineries here in the U.S. ¶¶4, 5, 9-11, 124-130.

- BP has been targeted by widespread government accusations of and investigations into illegal price manipulation and fixing in the propane market (to which a BP employee has pled guilty), the crude oil over-the-counter market and the market for unleaded gasoline, which investigations burden the Company with substantial costs and the inconvenience of dealing with the existing investigations and expose it to the substantial threat of criminal indictment and fines and penalties, creating another public relations black eye for BP. ¶¶4, 12, 131-140.

Defendants' grossly negligent failure to properly oversee the operations of BP has exposed BP to potential criminal liability, hundreds of millions of dollars of damages (including massive remedial costs) and badly damaged BP's corporate image and reputation. ¶¶5, 149.

### III.    SUMMARY OF THE ARGUMENT

#### A.    There Is No Diversity of Citizenship

BP's attempt to create federal jurisdiction by accusing plaintiffs of "fraudulently" suing Alaska resident individuals to destroy diversity removal on diversity grounds is frivolous. This action should be remanded to state court:

- *First*, there is *no diversity of citizenship*. Plaintiff UNITE HERE is deemed a citizen of the states where its trustees reside, Illinois, Georgia and Florida – where several defendants, *whose joinder has not been questioned*, also reside. Nominal parties BP America and BP Oil are also properly "realigned" as party-plaintiffs for diversity purposes and are citizens of Illinois. London Pensions Fund and nominal party BP p.l.c. (also properly "realigned" as a party-plaintiff) are both citizens of the U.K. – as are several defendants the removing defendants do not claim were fraudulently

joined, notably most of the members of the Board of Directors of BP p.l.c. Plaintiff Pickett and nominal party BPX (also "realigned" as a party-plaintiff) are both citizens of the State of Alaska – as are several ***properly joined*** defendants who are potentially liable on valid claims for breach of fiduciary duty – including the duty of care they owed the BP entities involved. There is ***no diversity of citizenship***.

- ***Second***, defendants cannot manufacture diversity merely by claiming certain non-diverse Alaska-resident defendants were fraudulently joined. Instead, they were required to ***plead with particularity*** in their removal petition that plaintiffs have not – ***and could not even with leave to amend*** – plead a potentially valid claim against ***any*** Alaska-resident defendant. This they cannot do. The Alaskan defendants named were not inconsequential actors joined only to defeat diversity. The Complaint's factual allegations arose in substantial part from negligent conduct that occurred in the State of Alaska where BP's single largest global operations take place. There is no question that the Alaskan defendants, including BPX's President – a BPX Director who provided direct testimony to the U.S. Congress of the details of his complicity in the wrongdoing – and two of BPX's Senior Vice Presidents who were in charge of Alaskan operations, owed and breached fiduciary duties to BP, regardless of what species of corporate law is eventually applied to determine their liability. Moreover, because the Complaint alleges concerted action between the Alaskan defendants and the other defendants, BP cannot meet its heavy burden to ***prove*** fraudulent joinder by establishing no claim for relief has been (or could be) stated against the Alaskan defendants.

- ***Third***, defendants ***improperly*** ask this Court to make merits determinations that apply equally to all defendants, *i.e.*, failure to state a claim upon which relief can be granted, which go to the ultimate issues of this case in violation of the "common defense rule."

- ***Fourth***, the Alaskan defendants were served ***before*** the case was removed, creating a defect in federal jurisdiction under the "forum-defendant rule."

- ***Fifth***, because a non-removable companion action, *Donnelley and Foreman vs. Sutherland, et al.*, No. 3AN-06-12332CI, filed 10/19/06 ("*Donnelley/Foreman* Action") pending in Alaska State Court includes a Florida plaintiff and naming three non-diverse defendants (also Florida citizens), will go forward in Alaska State Court, this case should as well.

BP's removal of the action should be seen for what it really is – part of a tactical strategy to ultimately transfer this suit to federal court in the Southern District of New York ("S.D.N.Y."). This would not only deprive the plaintiffs in this action of their proper choice of forum, but place the case in a venue ***that has nothing to do with the underlying facts asserted in this case*** and where, unlike Alaska where key actors live, many BP directors and officers worked and traveled on BP business

and where the conduct of the BP directors had direct impact, the ability to obtain personal

jurisdiction over defendants would be dubious at best.[3]

1. **Plaintiff UNITE HERE and Eight Undisputedly Properly Joined Individual Defendants Are Citizens of Illinois, Georgia and Florida, as Are BP America and BP Oil**

UNITE HERE has 22 trustees.[4]  As a pension fund, for diversity purposes it is viewed as a

citizen of each of the states its trustees are citizens of –  here, Illinois, Georgia and Florida.  *See*

Blasy Aff. ¶4, *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

Nominal Parties BP America and BP Oil are re-aligned as parties-plaintiffs for purposes of diversity.

*See In re Digimarc Corp. Derivative Litig.*, No. 05-1324-HA, 2006 U.S. Dist. LEXIS 56134, at *13

(D. Or. Aug. 11, 2006).  They are also citizens of Illinois. *See Nike, Inc. v. Comercial Iberica de*

*Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994) (corporation is a citizen of the state of

its principal place of business).  Since the following defendants are – according to the removal

petition – citizens of these same states – diversity is defeated (*see* ¶¶38-40, 52, 54, 56, 58-59, 61, 63;

Def's Not. ¶5):

| DEFENDANT | POSITION AT BP | STATE OF CITIZENSHIP |
|---|---|---|
| John H. Bryan | BP p.l.c. Director | Illinois |
| Erroll B. Davis, Jr. | BP p.l.c. Director | Georgia |
| Walter E. Massey | BP p.l.c. Director | Georgia |

---

[3]    "The policy underlying removal to federal court . . . to protect non-resident defendants from possible bias in state courts" is offended rather than furthered here.  *Apelian v. United States Shoe Corp.*, 664 F. Supp. 1370, 1372 (C.D. Cal. 1987).  As the Complaint makes clear, BP's presence – and power – in Alaska is unparalleled.  BP's officers and directors negligently, if not intentionally, directed actions in and at the State of Alaska that caused colossal harm to Alaska.  Defendants seek to remove to federal court not to prevent being "home-towned," but instead as part of a plan to flee Alaska altogether through a transfer to the S.D.N.Y. where none of their wrongdoing occurred, there is no evidence and there are no witnesses or opportunities for live testimony to a jury or for a jury to conduct a site inspection.

[4]    *See* ¶4 of the Affidavit of Mary K. Blasy in Support of Plaintiffs' Motion to Remand ("Blasy Aff.").

| DEFENDANT | POSITION AT BP | STATE OF CITIZENSHIP |
|---|---|---|
| Rodney F. Chase | Former BP p.l.c. Director | Florida |
| William Douglas Ford | Former CEO of BP p.l.c. | Florida |
| Ross J. Pillari | Former President of BP America | Florida |
| Debra A. Plumb | BPX Director | Illinois |
| Debra A. Dowling | BPX Director | Illinois |
| Daniel B. Pinkert | BPX Vice President and Director | Illinois |
| Paula J. Clayton | BPX Senior Vice President | Illinois |

BP America has not asserted that any of these defendants was fraudulently named. Thus, wholly apart from any fraudulent joinder claim, removal on diversity grounds was improper.

> **2.      Plaintiff London Pensions Fund Authority and 18 Undisputedly Properly Joined Defendants Are Citizens of the U.K., as Is BP P.l.c.**

BP's removal petition is also defective for ignoring the presence of London Pensions Fund as a plaintiff – and the fact that BP p.l.c. is aligned as a party-plaintiff for purposes of diversity. *See Digimarc*, 2006 U.S. Dist. LEXIS 56134, at *13. London Pensions Fund, which owns over three million shares of BP ordinary shares and ADRs valued at over $50 million, is the pension fund for the City of London employees. *See* Blasy Aff. ¶5. It is headquartered in London, England. *Id.* It, like BP p.l.c., is a U.K. citizen. *Id.* BP admits the 18 U.K. defendants it concedes were legitimately sued are U.K. citizens.[5] *See* ¶¶20(b), 30-37, 41, 42, 44-46, 48, 51, 53, 60, 64; Def's Not. ¶4. Thus, diversity is not present with U.K. citizens on both sides of the case.

---

[5]      The U.K. citizen defendants include: Sutherland (BP p.l.c. Chairman); Prosser (BP p.l.c. Deputy Chairman), Lord Madingley (BP p.l.c. CEO); Grote (BP p.l.c. CFO and Executive Director); Hayward (BP p.l.c. CEO of Exploration & Production and Executive Director); Manzoni (BP p.l.c. CEO of Refining & Marketing and Executive Director); Allen (BP p.l.c. Group Chief of Staff and Executive Director); Conn (BP p.l.c. Group Executive Officer, Strategic Resources and Executive Director); Julius (BP p.l.c. Director); McKillop (BP p.l.c. Director); Flint (BP p.l.c. Director); Castell (BP p.l.c. Director); Miles (former BP p.l.c. Director); Nicholson (former BP p.l.c. Director); Olver (former BP Deputy CEO and Director); Buchanan (former BP p.l.c. CFO and Executive Director); Springett (former BPX Vice President); and Graham (former BPX Senior Vice President) (collectively, the "18 U.K. Citizen Defendants").

### 3. Plaintiff Jeffrey Pickett and Three Properly Joined Alaska Defendants Are Citizens of Alaska, as Is BPX

Because Pickett and BPX, which is aligned as a party-plaintiff for diversity purposes, are Alaska citizens and there are defendants who are Alaska citizens, diversity is lacking. *See* ¶18, 20(c); Def's Not. ¶5(c); *Nike*, 20 F.3d at 991; *Digimarc*, 2006 U.S. Dist. LEXIS 56134, at *13. The three Alaska defendants who are potentially liable and were properly named include:

| DEFENDANT | POSITION AT BP | ALASKA CONNECTION |
|---|---|---|
| Stephen Marshall | President BPX and Director BPX until 1/06 | Domiciled in Anchorage Alaska Citizen |
| Neil R. McCleary | Senior Vice President BPX | Domiciled in Anchorage Alaska Citizen |
| Chris J. Phillips | Senior Vice President BPX | Domiciled in Anchorage Alaska Citizen |

## B. Joinder of the Alaska Defendants Was Not Fraudulent

### 1. The Alaska Defendants Allegedly Played a Substantial Role in the Wrongdoing

This action alleges breaches of fiduciary duty due to gross mismanagement, *i.e.*, violations of the duty of due care owed by the directors and officers of BP p.l.c. (the parent company) and the directors and certain officers and senior employees of BP's operating subsidiaries in North America, including BPX here in Alaska. ¶1. The Complaint alleges these corporate fiduciaries were responsible for major operational failures, including failures to properly oversee and manage BP's oil exploration, production and pipeline operations here in Alaska. ¶¶4-8. The alleged misconduct included concerted action involving failures to comply with state and federal environmental and safety laws and regulations protecting Alaska's environment and Alaska citizens employed by BP. ¶¶1, 153. Key allegations involve the recent incidents on Alaska's North Slope, where leaks in pipelines under the supervision of BP caused environmental damage and a significant curtailment of

oil production, harming BP.[6] ¶4. The Alaska pipeline leaks have resulted in a major disaster for BP, resulting in Congressional hearings, grand jury investigations and federal and state regulatory proceedings which focus upon the failure of BP's Alaska-based officers (the same defendants claimed to be fraudulently joined) and the BP corporate board to properly operate and maintain BP's Alaska pipelines. ¶¶4, 15, 122, 150, 151.

Because this action involves, in significant part, the failure of BP's directorial and management teams to oversee and properly manage its operations here in Alaska, and a number of Alaskan entities and residents are involved, this action, involving an Alaska resident BP stockholder as one of the plaintiffs, was logically filed in Alaska state court. ¶¶18, 20(c). As the Complaint demonstrates, BP admits its Alaska operations are among its most important:

**Our business in Alaska**

**BP Exploration (Alaska) Inc. (BPXA) operates 13 North Slope oil fields, four North Slope pipelines, and owns a significant interest in six other producing fields. Our 26.35% interest in the Prudhoe Bay natural gas resource is a large undeveloped source of natural gas**

- Alaska provides about 10% of our worldwide oil production

- we have been a major player in Alaska since 1969 when significant oil was found at Prudhoe Bay, following ten years of preliminary exploration and investment

- we are the operator of Prudhoe Bay, North America's largest oil field, following a realignment of oil and gas ownership interests in 2000

* * *

- throughout our activities, we apply stringent environmental, safety, and social standards. Some of our commitments are incorporated within the Charter signed with the State of Alaska in 1999

*As an upstream business of BP plc, BPXA is responsible for oil and gas exploration, development and production in Alaska.*

---

[6] It also harmed the State of Alaska by depriving the State's Permanent Fund of royalties.

*BP Pipelines Alaska Inc. provides oversight for our interest in the Trans-Alaska Pipeline System and local North Slope pipelines*.

*BP Transportation (Alaska) has oversight for BP's shipping and interest as a common carrier for the Trans-Alaska Pipeline*.

\*        \*        \*

**Our business performance**

**Exploration, production and transportation:  Highlights**

From our long-standing commitment to Alaska and our significant investment there for over 40 years, ***we are one of the major oil and gas producers in the state. We have historically been Alaska's largest investor and taxpayer***.  Examples of our investments in Alaska are highlighted below:

- we operate 13 North Slope oil fields, including Prudhoe Bay, with daily gross production of approximately 720,000 barrels of oil equivalent

- we have a 26.35% interest in the North Slope's recoverable natural gas resource – some 35 trillion cubic fee

- 2003 BP Alaska net production was 12% higher than 2001, due to production from the Northstar field and the performance of satellite fields around the mature Prudhoe Bay and Kuparuk fields

- BP Pipelines owns about 47% of the 800-mile Trans-Alaska Pipeline System

BP's ties to – and impact on – the U.S. are highlighted by the following:

- ***39% of BP's worldwide shareholders reside in the U.S***.

- ***BP has approximately 34,000 employees in the U.S., one-third of its total worldwide employees and more than in any other country***.

- BP produces more crude oil in the U.S. than in any other country.

- BP produces more natural gas in the U.S. than in any other country.

- BP's capital expenditures in the U.S. are larger than in any other country and BP has more operating capital employed in the U.S. than in any other country.

\*        \*        \*

*BP Exploration (Alaska) Inc. ("BPX" or "BPXA") is a Delaware corporation with its principal place of business in Anchorage, Alaska . . . and [is] a direct subsidiary of BP Oil.  BPX is Alaska's sixth-largest employer with 1,320 employees in 2003,*

- 9 -

*and an annual payroll of $204.2 million*.  According to BP, BPX was committed to safety in its operations:

**Safety and operational integrity**

As part of the BP group, BP Exploration (Alaska) Inc. (BPXA) is guided by corporate health, safety, security and environmental (HSSE) policies.

\*          \*          \*

The management of every business unit translates these expectations into performance targets.  *Each business in the Group must demonstrate continuing progress toward these targets through an HSSE assurance process that involves audits, reports and dialogue within the company*.

Accordingly, within Alaska, BPX has . . . *taken meaningful steps to prevent spills* . . . .

¶¶23-24, 27.[7]

Thus, because a significant part of the relevant conduct occurred in Alaska and involved defalcations by directors and officers of BP's Alaska operating subsidiaries who were responsible for BP's day-to-day operations here, it was natural – *and proper* – that BP plaintiff stockholders suing for these defalcations would sue in Alaska State Court and include the individuals responsible for BP's grossly mismanaged Alaska operations as defendants.[8]

_____

[7]        Unless otherwise noted, emphasis is added and citations are omitted.

[8]        This type of lawsuit, a shareholders derivative lawsuit on behalf of a corporation domiciled outside of Alaska, *i.e.*, a "foreign corporation," but having significant operations here, is expressly contemplated by Alaska Corporations Code §10.06.435, which applies on its face to foreign corporations ("[**a**]*n action may be brought in the right of a domestic or foreign corporation* to procure a judgment in its favor") and §10.06.740, which governs the status of "foreign corporations" doing business in Alaska ("[a] foreign corporation . . . enjoys . . . the same, but no greater, rights and privileges as a domestic corporation").  And while Alaskan courts may review the analysis employed by courts in other jurisdictions, including the federal courts, Delaware, "the mother of corporate law," and the laws of England, the Alaska Supreme Court has expressly rejected adopting decisions that contradict Alaska's own corporate law statutes which "were not modeled after a specific state provision or model code."  *Jerue v. Millett*, 66 P.3d 736, 746 (Alaska 2003).

## 2. The Allegations Against the Alaska Defendants Are Clearly "Potentially" Valid

There was nothing *fraudulent* about plaintiffs naming among the 42 defendants sued here the three Alaska individuals, including the President and two Senior Vice Presidents of BPX, BP's Alaska operating subsidiary. Defendants suggest in their removal petition that these individuals cannot legitimately be named as defendants as no valid claim can possibly be stated against them. This is not so. Under whichever species of corporate law the Alaska court decides to apply (Alaska, English or Delaware), directors and officers of wholly-owned operating subsidiaries such as BPX owe fiduciary duties not only to the operating subsidiaries, *but also to the parent corporations that control them and designated them as directors or officers as well.* *See* BP's Corporate Disclosure Statement (Docket #16), filed herein on 11/1/05; Alaska Stat. §§10.06.483, 10.06.450; 8 Del. C. §§141, 142; *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) ("in a parent and wholly-owned subsidiary context, *the directors of the subsidiary are obligated . . . to manage the affairs of the subsidiary in the best interests of the parent and its shareholders*"); *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 364 (S.D.N.Y. 2006) ("under English law directors owe duties to the companies" based on case law and an "affidavit of English barrister David Chivers" admitted "as evidence of English law"[9]); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 116 (S.D.N.Y. 1999) (same) (citing 5 Francis Beaufort Palmer, *Palmer's Company Law* §8.501 (1998)); Chivers Report at 5, ¶16 ("It is clearly established as a matter of English law that, as a general rule, officers and directors of a company owe fiduciary duties to the company . . . ."); *Partco Group Ltd. v. Wragg and Scott*, [2002] EWCA (Civ) 594 (Eng.) (holding claims against the officers and directors of an operating subsidiary for negligent

---

[9] The "Report of David Chivers Q.C.," admitted as evidence in *Abbey National* ("Chivers Report"), is submitted herewith as Exhibit A to the Blasy Aff.

breaches of the duty of care raised triable issues of fact) (Blasy Aff., Ex. B). Here, cognizable claims are stated that the Alaska defendants, officers and directors of BP's operating subsidiaries, breached the duties of due care which they owed to BPX and BP, its corporate parent. *Id.*; *see also Martinez v. Cape Fox Corp.*, 113 P.3d 1226, 1228-29 (Alaska 2005); *Abbey Nat'l*, 423 F. Supp. 2d at 364; *Re Citybranch Group Ltd. v. Rackind*, [2004] EWCA (Civ) 815 (Eng.) (the expression "the affairs of the company," in the context of an executive's duties, can include the affairs of a subsidiary; affairs of a subsidiary are also the affairs of its holding company) (Blasy Aff., Ex. C).

The Complaint alleges that Marshall is the President of BPX and served as a director of BPX until 1/06; Phillips served as a Senior Vice President of BPX until at least 1/22/02; and McCleary served as a Senior Vice President of BPX until at least 1/22/02. ¶¶57, 62, 65. The Complaint alleges there were: "***Hundreds of pages of documents highlighting BP's nearly decade-long neglect of its Prudhoe Bay pipelines, its internal safety regulations, and the company's alleged cover-up of past oil spills that resulted from severely corroded pipelines***" including "***emails, photographs, videos, and letters sent to BP executives . . . as well as internal reports, all of which were early warnings about problems plaguing BP's Prudhoe Bay operations, were written by more than 100 company whistleblowers and date back as far as 1999***." ¶6. Those same allegations state "[*t*]***he documents are extraordinary in that they provide a detailed picture of how BP seemingly ignored dozens of early warnings from employees that its drilling operations on Alaska's North Slope would be doomed if the company did not take immediate steps to upgrade its pipelines and other infrastructure***." *Id*. As officers and/or directors of BPX at various periods between 1999 and 8/06, Marshall, McCleary and Phillips would clearly have been the BP executives dealing (or mis-dealing) with these "early warnings."

Moreover, as specifically alleged in ¶¶147-149, Marshall, McCleary and Phillips "are fiduciaries of BP" and "***owe to [it] the duty to conduct the business of the Company loyally,***

*faithfully, carefully, diligently and prudently*," "in their roles as executives and/or directors of the Company, **participated in the acts of mismanagement alleged [t]herein and/or acted in gross disregard of the facts and/or failed to exercise due care to prevent the unlawful conduct**," and "**are responsible for the gross mismanagement of BP**, for abdicating their responsibilities and mismanaging the Company in the following ways:

> (a)    They caused BP to violate applicable law, disregarding their duties as fiduciaries.
>
> (b)    They have caused BP to violate core worker safety and environmental laws and exposed the Company and its shareholders to criminal liability and unnecessary costs, fines, penalties and tort liability.
>
> (c)    They exposed the Company and its shareholders to massive fines, penalties and compensatory damage awards for violations of U.S. and Alaska state environmental laws.
>
> (d)    They subjected BP to adverse publicity and loss of goodwill, greatly increased its costs to raise capital, and impaired its earnings."

The Complaint directly quotes Marshall as **admitting** he damaged BP by breaching his fiduciary duties to the Company:

> •    8/6/06 Marshall's statement to the press about the fact that BP had not "pigged" the transit lines where corrosion caused the massive 3/06 leak since 1998: "**Clearly, in hindsight, that program was not sufficient**."  ¶110.
>
> •    8/17/06 Congressional Testimony by Marshall: BP had "**a gap in [its] corrosion inspection system**" that allowed the transit lines to corrode and develop holes through which oil could escape. *Id*.
>
> •    8/17/06 Congressional Testimony by Marshall: defendant Woollam, BPX's chief corrosion inspector, was pulled from a supervisory position and transferred out of Alaska after outside investigations determined there was an "atmosphere of intimidation" in the corrosion monitoring department that was "suppressing safety concerns."  ¶151.
>
> •    8/17/06 Congressional Testimony by Marshall: "**I deeply regret this situation occurring on my watch**." *Id*.

The Complaint details Marshall's knowledge of and control over BPX's failed operations and high risk of damage to BP:

In 2003, Steve Marshall, president of BP Alaska, warned in an internal memo to staff: "***Beginning now, we will focus on safety as we have never focused on it before, as if our lives and our future in Alaska depended on it.  Because they do***."

The previous year, the site had more than 11 recordable injuries and one day-away-from-work case per month, a well explosion that severely injured an operator, the death of a contract worker, and an average of more than six vehicle incidents per month.  It seemed things could only get better.

***Yet, in the three years since Mr. Marshall's call to action, BP has continued to suffer accidents and regulatory violations.***

The situation came to a head last month, when a BP pipeline spilled up to 270,000 gallons of crude – the biggest spill ever in Prudhoe Bay, North America's largest oil field.

***The Alaska Department of Environmental Conservation has blamed corrosion for the spill, something workers have for years complained had been neglected by management***.

"BP management is focused on their own short-term profit and not on BP's long-term impact to this country," said Marc Kovac, a mechanic who has worked at the Alaska field for 28 years.  "This breach is not an isolated case.  BP has experienced ruptures in the recent past and more lines other than this one are in a similar condition."

\*        \*        \*

***Workers in Alaska have long . . . complain[ed] that BP cuts corners***, putting workers and the environment at risk, charges BP adamantly denies.  ***As far back as 1999, an e-mail obtained by the FT documents concerns being raised over staff ability to respond to critical events given the increase in workloads***.

To keep day-away-from-work cases down, one worker said, ***BP sometimes ordered those injured back to work, a complaint also made in a safety audit on BP in Texas***.

An internal union e-mail obtained by the FT says a worker helping with the March clean-up in Alaska slipped on the icy road, breaking a wrist and tearing two knee ligaments:  To hide the incident, BP management ordered this man back to work to keep this incident off the "time off work for a work-related injury" record, the union said.

¶117.

The Complaint also specifically details how Marshall was integrally involved in falsifying

records to cover up the fact that defendants were not undertaking required corrosion prevention

efforts in order to inflate profits (and of course their bonuses):

Indeed, earlier this year, Glen Plumlee, a senor financial analyst with Alyeska Pipeline Service Co., operator of the trans-Alaska pipeline system of which BP is a majority owner, filed a complaint with federal labor officials alleging that company executives retaliated against him because he cooperated with the Environmental Protection Agency's criminal investigation into the company.

Plumlee, 51, of Anchorage, told federal investigators he was pressured to boost estimates of how much Alyeska was spending to fight corrosion on the trans-Alaska oil pipeline. Severe corrosion in one of BP's transit pipelines at Prudhoe Bay, which connects directly to the trans-Alaska pipeline, is the reason the company shut down its North Slope operations this week.

\*       \*       \*

***Plumlee claims that company executives pressured him in December 2005 to alter the amount of money BP-controlled Alyeska spent on pipeline corrosion – from $28 million to $46 million – for the previous year, which he refused to do.***

***Plumlee added that it wasn't the first time he had been asked to cook the books.*** "***On September 19, 2005, an Alyeska executive asked him to pull together the numbers on corrosion spending for Steve Marshall, BP Exploration (Alaska) Inc.'s president****,*" according to an April 5 report in the *Fairbanks News-Miner.*

Another high-level executive of BP-controlled Alyeska also tried to warn company executives about numerous safety and maintenance problems associated with the 800-mile trans-Alaska pipeline system that, if continued to go unanswered, would have a direct impact on BP's Prudhoe Bay operations.

Last August, Dan Hisey, the former chief operating officer of Alyeska, created a comprehensive list for Alyeska's top executives of the 101 current and potential problems plaguing the pipeline system, one of which was severe corrosion. ***A week after the list was circulated, Hisey's position was abolished***.

¶119.

The Complaint thus alleges with specificity that Marshall, McCleary and Phillips were

primary actors in the negligent conduct that damaged BP. As such, the removing defendants cannot

plead with ***particularity*** and show by "***clear and convincing evidence***" that "there is ***no possibility***

that [plaintiff] could state a claim in . . . state court" against defendants Marshall, McCleary and

Phillips.[10]  *See Cal. Dump Truck*, 24 Fed. Appx. at 729-30.

### 3. Once a "Potentially" Valid Claim Against Any Alaska Defendant Is Identified, Remand Is Mandated

Defendants' attempt to meet ***their*** burden of proving fraudulent joinder by having this Court

engage in speculation as to what "governing English law" is, and conclude that plaintiff cannot

"possibly maintain this derivative action" under it, should be rejected.  Def's Not. ¶7.  The relevant

inquiry on remand is whether defendants have shown plaintiffs cannot ***potentially*** "'state a cause of

action against a resident defendant'" in state court.  *Evans v. Mut. of Omaha Ins. Co.*, 134 Fed.

Appx. 194, 195 (9th Cir. 2005).  Ambiguities as to whether a cognizable claim can be stated must be

resolved in plaintiffs' favor and the action must be remanded unless the "'***failure is obvious***

***according to the settled rules of the state***'" of Alaska.  *Id.*; *see also Cont'l Ins. Co. v. Ursin*

*Seafoods, Inc.*, No. 92-35023, 1992 U.S. App. LEXIS 25488, at *5 (9th Cir. Oct. 6, 1992) ("We

apply the choice of law rules of the state in which the district court is located to determine which

state's substantive law governs.") (citing *Alaska Airlines v. United Airlines, Inc.*, 902 F.2d 1400,

1402 (9th Cir. 1990)).  This Court is neither required nor permitted to guess whether and how ***an***

***Alaska court*** would apply Alaska, Delaware or English law to determine the resident defendants'

liability because there is no Alaska Supreme Court decision on point or "clear consensus" among

Alaska appellate courts on this point of law.  *Simpson v. Union Pac. R.R. Co.*, 282 F. Supp. 2d 1151,

1158 (N.D. Cal. 2003); *see also Smith v. S. Pac. Co.*, 187 F.2d 397, 402 (9th Cir. 1951) ("The

---

[10]     *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 Fed. Appx. 727, 729-30 (9th Cir. 2001) (to meet their heavy burden to demonstrate fraudulent joinder defendants must prove "there is ***no possibility*** that [plaintiff] could state a claim in . . . state court," including if the court "granted plaintiffs leave to amend their complaint, allowing them to address the deficiencies the defendant . . . assert[s]"); *Brothers v. Fortis Ins. Co.*, No. 04-02174 PVT, 2004 U.S. Dist. LEXIS 16358, at *5 (N.D. Cal. Aug. 11, 2004) (requiring defendants to shoulder their burden to demonstrate fraudulent joinder with "***clear and convincing evidence***").

necessity of establishing in the complaints the relationship of the defendants . . . is at best a doubtful question of state law which should be tried in the state court and not determined in removal proceedings.").  Moreover, since the Complaint states plaintiffs' claims are brought pursuant to U.S. law, specifically that of Alaska, for purposes of this motion the Court should constrain its review to whether plaintiffs have stated an actionable claim under Alaska law.  *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); ¶24.  As such, it is impossible for a court to rule as a matter of law at this point that allegations asserting these claims for relief are ***fraudulent***.  Judicial restraint, principles of comity and respect for the Alaska judicial/legal system mandate that this Court defer to the Alaska courts for such a decision.

### 4.    Because the Alaska Defendants Are Alleged to Have Engaged in a Concerted Action with the Other Defendants, They Cannot Be Viewed as Fraudulently Joined

Because it is alleged that "[a]ll defendants, singly ***and in concert***, engaged in the [alleged] conduct in intentional breach and/or reckless disregard of their fiduciary duties to the Company," (¶153), an attack on the Alaska co-conspirator defendants who performed "necessary" components of the misconduct "***wholly fails to show a fraudulent joinder of parties***," mandating that the case be "remanded to the state court." *Jones v. Republic Prods., Inc.*, 112 F.2d 672, 674 (9th Cir. 1940).  As such, defendants cannot meet their heavy burden of demonstrating defendants such as Marshall, BPX's President who plainly conceded his complicity to Congress on 8/17/06 (¶151: "***I deeply regret this situation occurring on my watch***"), or BPX's two Vice Presidents, were fraudulently joined to defeat diversity jurisdiction.

### C.    Removal Cannot Be Justified by a Ruling on a Defense Which Is Common to All Defendants, *i.e.*, Failure to State a Claim Upon Which Relief Can Be Granted

Defendants' request that this Court permit removal by ruling that "plaintiffs cannot assert derivative claims on behalf of or against these defendants under governing English law" falls short for another reason.  Def's Not. ¶7.  "[W]hen a nonresident defendant's showing that there is no

- 17 -

reasonable basis for predicting that state law would allow recovery against an in-state defendant *equally disposes of all defendants*, there is no improper joinder of the in-state defendant" and "*[i]n such a situation, the entire suit must be remanded to state court*." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004), *cert. denied*, 544 U.S. 992 (2005); *see also S. Pac. Co.*, 187 F.2d at 400 ("if joint liability appears from the ultimate facts pleaded in the complaint, *appellant's motive in joining the individual defendant is not fraudulent even if the sole reason for joinder is [to] prevent removal*"). Here, if the Court decides to apply English – or some other law – and determines plaintiffs cannot state a derivative cause of action under whatever law is applied against the Alaska defendants, that finding *will equally prohibit plaintiffs from bringing this derivative action against any of the defendants*.[11] *See* 1 James Wm. Moore, *Moore's Federal Practice* §2.04 at 2-28 – 2-30 (3d ed. 1997). The "common defense rule" dictates that this Court reject defendants' invitation to decide the ultimate issues of liability against all defendants in this case and instead remand it back to Alaska State Court.[12]

> ### D.  The Removal Petition Was Untimely Filed

The removal petition is also defective as it was untimely filed. Defendants concede that service of process on Alaska defendant Marshall was completed on 10/5/06, 19 days *before* the removal petition was filed. Def's Not. ¶2. Under the "forum-defendant rule," service upon Marshall, a "non-diverse defendant [who] was also a citizen of the state in which the action was brought, thereby precluded removal jurisdiction by virtue of 28 U.S.C. §1441(b)." *Local Union 598,*

---

[11]     Note that defendants are cleverly careful to nowhere expressly concede that plaintiffs do state a valid claim for relief via a derivative action against the BP parent company directors.

[12]     Once again, if plaintiffs' case fails for failure to state a viable cause of action, then that disposes of the entire case, not just the claims against the Alaska resident defendants – and that is a decision involving the interpretation of unresolved points of Alaska law best left to the Alaska State Courts. *Union Pac.*, 282 F. Supp. at 1159.

*Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1215 (9th Cir.), *aff'd*, 488 U.S. 881 (1988); *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 935 (9th Cir. 2006); *Nat'l Paint & Coatings Ass'n v. S. Coast Air Quality Mgmt. Dist.*, No. 04-056241, 2006 U.S. App. LEXIS 19128, at *2 (9th Cir. July 27, 2006).[13]

    **E.    Removal Serves No Logical Purpose as a Nearly Identical, Non-Removable Derivative Action Involving the Same Claims and Defendants Remains in, and Will Be Prosecuted in, Alaska State Court**

A plaintiff in the *Donnelly/Foreman* Action, a virtually identical derivative action pending in Alaska State Court, is a citizen of Florida. *See* Blasy Aff., Ex. D ¶18. The *Donnelly/Foreman* Action names three non-diverse defendants who are citizens of Florida. *Id.*; Def's Not. ¶4. The *Donnelly/Foreman* Action is non-removable and will go forward in state court. As such, removal of this case – and its later transfer to the S.D.N.Y. if and when defendants try that gambit – accomplishes no recognized justification for depriving plaintiffs of their forum selection. *See Apelian*, 664 F. Supp. at 1372; *Spencer*, 393 F.3d at 870. These overlapping litigations should go forward together in one forum – Alaska State Court.

This is an important case brought by shareholders which ***own over $53 million worth of BP shares***. Given the scandals that have recently engulfed BP, it is obviously brought in good faith. A review of the Complaint will reveal the care with which it was drafted. Alaska, where BP has huge operations, and where a significant portion of the negligent conduct damaging BP took place and had a significant societal impact, is clearly a proper forum for this action, ***especially since the Alaska Corporations Code expressly contemplates derivative actions being prosecuted against foreign***

---

[13]    "This 'forum defendant' rule 'reflects the belief that [federal] diversity jurisdiction is unnecessary because there is less reason to fear state court prejudice against the defendants if one or more of them is from the forum state.'" *Spencer v. United States Dist. Court*, 393 F.3d 867, 870 (9th Cir. 2004) (citing Erwin Chemerinsky, *Federal Jurisdiction* §5.5, at 345 (4th ed. 2003)).

*corporations in Alaska*. *See* Alaska Stat. §§10.06.435, 10.06.740. Derivative actions raise state law issues. They are traditionally state court actions. Removal statutes are to be strictly construed not only to protect plaintiffs' legitimate choice of forum, but to prevent the creation of lingering jurisdictional defects which can undermine any ultimate judgment,[14] and because an identical derivative suit has not been removed and is going forward in Alaska State Court, this action should be remanded. Plaintiffs' costs and expenses, including attorneys' fees should also be awarded.

## IV. BECAUSE FEDERAL SUBJECT MATTER JURISDICTION DOES NOT EXIST, THE CASE MUST BE REMANDED

### A. The Court Must Strictly Construe the Removal and Jurisdiction Statutes in Favor of Remand

Defendants may remove an action filed in state court to federal court only when the federal court would have had original subject matter jurisdiction over the action. *See* 28 U.S.C. §1441(a); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163-64 (1997); *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977). Defendants have not removed this derivative action on the basis of federal question jurisdiction. The sole issue before the Court is whether there is complete diversity jurisdiction. *See* 28 U.S.C. §§1332, 1441(b); *Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)); *Yniques v. Cabral*, 985 F.2d 1031,1034 (9th Cir. 1993) (same).

Once a motion to remand is filed, ***the parties who removed the case have the burden of establishing that federal jurisdiction is proper***. *See Gaus v. Miles, Inc*., 980 F.2d 564, 566-67 (9th Cir. 1992); *Emrich v. Touche Ross & Co*., 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co*., 257 U.S. 92, 97 (1921)); 14C Charles Alan Wright, Arthur R. Miller &

---

[14]  Defects in subject matter jurisdiction ***cannot*** be waived. They persist. They can be raised *sua sponte* by a court of appeals ***even after trial***. *Chicago, B.&Q. Ry. Co. v. Willard*, 220 U.S. 413, 427 (1911) (remanding following resolution by trial in deference to federalism).

Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* §3739, at 424 (3d ed. 1998) ("***[T]he burden is on the party seeking to preserve the*** . . . ***removal*** . . . not the party moving for remand . . . to show that the requirements for removal have been met.").

The court must **strictly construe** removal jurisdiction, ***resolving all doubts in favor of remanding the action***. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Hendricks v. Dynegy Power Mktg., Inc.*, 160 F. Supp. 2d 1155, 1157 (S.D. Cal. 2001) ("[R]emoval jurisdiction is extremely limited. Accordingly, the removal statute, 28 U.S.C. §1441, ***is strictly construed against removal, and 'federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance*.'").

Strict construction is especially warranted in non-federal question jurisdiction cases because comity mandates that state courts be allowed to decide state cases unless the removed action falls squarely within the jurisdictional bounds Congress created for federal courts.[15] *Shamrock Oil*, 313 U.S. at 108-09; *Phillips v. Allstate Ins. Co.*, 702 F. Supp. 1466, 1468 (C.D. Cal. 1989); *Rezendes v. Dow Corning Corp.*, 717 F. Supp. 1435, 1437 (E.D. Cal. 1989).

> **B.** **This Court Lacks Subject Matter Jurisdiction Because Diversity of Citizenship Is Absent and the Action Alleges Only State Law Claims**

Removal was improper as diversity jurisdiction under 28 U.S.C. §1441(b) is not present.

---

[15]     Strict construction against removal helps to prevent a waste of judicial resources, because if it turns out that there is no jurisdiction, the federal court's judgment would necessarily be set aside on appeal. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 76-77 (1996) ("[I]f, at the end of the day and case, a jurisdictional defect remains uncured, the judgment must be vacated."). Such jurisdictional concerns can be avoided by remanding to state courts, which have general jurisdiction. *See Wenger v. W. Reserve Life Assurance Co.*, 570 F. Supp. 8, 10-11 (M.D. Tenn. 1983).

1. **As Plaintiffs UNITE HERE and BP America and BP Oil (Which Must Be Realigned as Parties-Plaintiffs for Diversity Purposes) and Eight Defendants, Which No-One Disputes Were Properly Joined, Are Citizens of Illinois, Georgia and Florida, Diversity of Citizenship Is Lacking**

For purposes of diversity jurisdiction, the citizenship of a pension trust fund such as UNITE HERE is determined by the citizenship of its trustees. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980); *Columbia Props.*, 437 F.3d at 899; *Lee v. Nesbitt*, 453 F.2d 1309, 1310 (9th Cir. 1971) (citing *Dersch v. United Mine Workers of Am.*, 309 F. Supp. 395 (S.D. Ind. 1969)). Therefore, complete "[d]iversity jurisdiction exists pursuant to the provisions of Title 28 U.S.C. §1332" only if all "Trustees [of a pension fund] are citizens of states other than the State" where defendants are citizens. *M & R Inv. Co. v. Fitzsimmons*, 484 F. Supp. 1041, 1044, 1053 (D. Nev. 1980), *aff'd*, 685 F.2d 283 (1982).

Plaintiff UNITE HERE has 22 trustees. *See* Blasy Aff. ¶4. Three reside in Illinois, one in Georgia and one in Florida. *Id.* Thus, plaintiff UNITE HERE is deemed a citizen of the states of Illinois, Georgia and Florida for purposes of diversity jurisdiction. *See Columbia Props.*, 437 F.3d at 899.

Defendants Bryan (BP p.l.c. Director), Plumb (BPX Director), Dowling (BPX Director), Pinkert (former BPX Director and Vice President), and Clayton (former BPX Senior Vice President) are residents and citizens of Illinois. *See* ¶¶38, 58, 59, 61, 63; Def's Not. ¶5. Defendants Davis (BP p.l.c. Director) and Massey (BP p.l.c. Director) are residents and citizens of the State of Georgia. ¶¶39, 40; Def's Not. ¶5. Defendants Chase (former BP p.l.c. Deputy CEO and Executive Director), Ford (former CEO of BP's Refining & Marketing Division and Executive Director of BP p.l.c.), and Pillari (former BP America President) are citizens and residents of the State of Florida. ¶¶52, 54, 56; Def's Not. ¶5. The removing parties have not claimed any of these defendants, which include current and former members of the BP p.l.c. Board and senior executives, are fraudulently joined.

As there are both plaintiffs and defendants who are citizens of Illinois, Georgia and Florida, diversity jurisdiction does not exist. This action must be remanded.

Additionally, the principal place of business of nominal parties BP America and BP Oil are in, and they are citizens of, Illinois. *See* ¶¶25, 26; Def's Not. ¶5; *Nike*, 20 F.3d at 991 (corporations are citizens both of states where principal place of business is and where incorporated).[16] Just as the *Digimarc* court held, where no answer contesting the action has been filed, the nominal party company is realigned as a party-plaintiff and "there [is] no basis for diversity jurisdiction under 28 [U.S.C. §]1332." 2006 U.S. Dist. LEXIS 56134, at *13. Here, plaintiffs have made no demand on the Board of Directors of the BP entities to institute this action and the BP entities have not yet responded to the action. ¶145. Therefore, for purposes of this motion, the BP entities are properly aligned as parties-plaintiffs.

> **2.** **As Plaintiff London Pensions Fund and Nominal Party BP P.l.c. (Which Must Be Realigned as a Party-Plaintiff for Diversity Purposes) and 18 Defendants, Which No One Disputes Were Properly Joined, Are Citizens of the U.K., Diversity of Citizenship Is Lacking**

BP also ignores the presence of the London Pensions Fund as a plaintiff in this case and the presence of the 18 U.K. Citizen Defendants. *See* ¶¶20(b), 30-37, 41, 42, 44-46, 48, 51, 53, 60, 64; Def's Not. ¶5. London Pensions Fund is the pension fund for City of London employees,

---

[16]     BP America and BP Oil are "realigned" as parties-plaintiffs for diversity purposes. The "'general [is] rule that the corporation is properly realigned as a plaintiff since it is the real party in interest' in derivative shareholder litigation." *Digimarc*, 2006 U.S. Dist. LEXIS 56134, at *9. Where, as here, no demand has been made on the board of directors or refused, the corporation's interest is not antagonistic to the plaintiff. *See Lewis v. Odell*, 503 F.2d 445, 447 (2d Cir. 1974); *see also Mertens v. Kaiser Steel Ret. Plan*, 744 F. Supp. 917, 922-23 (N.D. Cal. 1990), *aff'd*, 948 F.2d 1105 (9th Cir. 1991) ("In derivative actions, especially where jurisdiction is not based upon diversity, unless the corporate directors have shown an antagonism towards the plaintiff's action, the corporation should be aligned as a plaintiff."); *Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987) (holding aligning the corporation as a party defendant in a shareholder's derivative action is only proper where the corporation is actively antagonistic to the plaintiff's interests, and that mere inaction is not the equivalent of active antagonism).

headquartered in London and is a U.K. citizen. *See* Blasy Aff. ¶5. Defendants concede the 18 U.K. Citizen Defendants were legitimately sued. Thus, diversity is not present. *See generally Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 569 (2004) ("Because [plaintiff] had two partners who were Mexican citizens at the time of filing, the partnership was a Mexican citizen. . . . And because the defendant . . . was a Mexican corporation, aliens were on both sides of the case, and the requisite diversity was therefore absent."); *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir. 1983) ("Diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants.") (citing 28 U.S.C. §1332); *Nike*, 20 F.3d at 991 (same).

Moreover, nominal party BP p.l.c. is also a citizen of the U.K. *(see* ¶22; Def's Not. ¶5) and is aligned as a party-plaintiff. *See, e.g.*, *Digimarc*, 2006 U.S. Dist. LEXIS 56134, at *9-*15; *Lewis*, 503 F.2d at 447; *Mertens*, 744 F. Supp. at 922-23; *Duffey*, 820 F.2d at 1161. Diversity of citizenship is also lacking between BP p.l.c. and the 18 U.K. Citizen Defendants. Again, the case should be remanded.

> **3. As Plaintiff Jeffrey Pickett and Nominal Party BPX (Which Must Be Realigned as a Party-Plaintiff for Diversity Purposes) Are Alaska Citizens, as Are Three Properly Joined Individual Defendants, Diversity of Citizenship Is Lacking**

As plaintiff Pickett and BPX are both citizens of the State of Alaska for purposes of diversity, as are defendants Marshall, McCleary and Phillips, diversity is defeated. Like BP p.l.c., BP America and BP Oil, BPX is "realigned" as a party-plaintiff for diversity purposes. *See, e.g.*, *Digimarc*, 2006 U.S. Dist. LEXIS 56134, at *13. Because BPX's principal place of business is in Alaska, it, like Pickett, is a citizen of Alaska. Diversity jurisdiction does not exist.

> **C. Defendants Cannot Meet Their Heavy Burden of Demonstrating Fraudulent Joinder of the Alaska Resident Defendants by Clear and Convincing Evidence**

Ignoring the Alaska citizenship of plaintiff Pickett and the presence of BPX as a party-plaintiff, defendants attempt to manufacture diversity with plaintiff Pickett by claiming defendants

Marshall, McCleary and Phillips – citizens of Alaska – were fraudulently joined.  Beyond the fact this claim does not address the non-diversity of UNITE HERE or the London Pensions Fund with certain defendants who no one even claims were fraudulently joined, defendants cannot satisfy their heavy burden of establishing by clear and convincing evidence that the Alaska defendants were fraudulently joined for purposes of defeating diversity.

### 1.    Defendants' Burden of Proving Fraudulent Joinder Is a Heavy One

"To establish that an in-state defendant has been fraudulently joined, the removing party must show either that (1) there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, or (2) there has been *outright fraud* in the plaintiff's pleading of jurisdictional facts."   16 James Wm. Moore, *Moore's Federal Practice* §107.14, at 107-60 – 107-61 (3d ed. 2004); *see also Cal. Dump Truck*, 24 Fed. Appx. at 729; *Brown v. UPS*, No. C05-1718MJP, 2005 U.S. Dist. LEXIS 28281, at *7-*8 (W.D. Wash. Nov. 10, 2005). As defendants make no attempt to plead with particularity that there was "*outright fraud* in the plaintiff's pleading of jurisdictional facts," they must prove "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant[s] in state court."   16 Moore, *supra*, at 107-61.  They cannot do this.

Courts look to the face of the complaint to determine if a defendant has been fraudulently joined, which pleadings are accepted as true.  *See Pullman*, 305 U.S. at 537; *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983).  The "sole concern is whether, *as a matter of law*, the plaintiff has alleged a valid state law cause of action against the nondiverse defendant," and the court is not permitted to "weigh the merits of the plaintiff's claim."  16 Moore, *supra*, at 107-62.1 – 107-62.2. "[T]he standard is necessarily similar to that of motions to dismiss, with two exceptions: (1) th[e] Court may pierce the pleadings to make factual determinations, and (2) the Court may not make final determinations with regard to questions of state law that are not well-settled."  *Knutson v. Allis-*

*Chalmers Corp.*, 358 F. Supp. 2d 983, 995-96 (D. Nev. 2005) ("the Court must resolve all material ambiguities in state law in the Plaintiff's favor"). Where defendants present "[n]o evidence . . . to pierce the pleadings," a court must "look only to the allegations in the complaint." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 171 Fed. Appx. 18, 19 (9th Cir. 2006); *Ingram v. Bayer Corp.*, 166 Fed. Appx. 953, 954 (9th Cir. 2006) (same). If defendants challenge the complaint's allegations, they must establish by "clear and convincing evidence" (*Brothers*, 2004 U.S. Dist. LEXIS 16358, at *5) that "there is no possibility that [plaintiff] could state a claim in . . . state court," including if the court "granted plaintiffs leave to amend their complaint, allowing them to address the deficiencies the defendant . . . assert[s]."[17] *Cal. Dump Truck*, 24 Fed. Appx. at 729-30.

"The party attempting to prove fraudulent joinder has a heavy burden [of proof]." *Marathon Oil Co. v. Ruhrgas, A.G.*, 115 F.3d 315, 319 (5th Cir. 1997); *see also Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914) ("Merely to traverse the allegations upon which the liability of a

---

[17]     Defendants' citation to *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001) demonstrates the frailty in their argument. The *Princess Cruises* court did make the fraudulent joinder finding, disallowing remand, but only after noting severe defects in plaintiffs' only claim – one for fraudulent misrepresentation – that are not present in this case:

> In her original state court complaint, Mrs. Morris alleged that Mr. Jay Silberman, owner of Consultants, recommended the Princess Holy Lands cruise to the Morrises and "represented that Princess Cruises, Inc . . . was a reputable cruise line and that passengers in their care would be safely and adequately served." Such an allegation fails to state a claim for negligent misrepresentation against Consultants and **the failure is obvious according to settled law. Silberman's alleged statement is devoid of any meaningful specificity, amounting at most to a general recommendation of Princess akin to mere puffing.**

*Id.* at 1067-68. While plaintiffs in this action proffer misstatements made by defendants about their purported good corporate conduct in Alaska as evidence of a cover-up, they are **very specific** statements. *See* ¶¶13, 22, 23, 27, 68, 75-82, 97, 106. However, even more important – the case is for **breach of fiduciary duties** – not fraudulent misrepresentation, so even if the alleged misstatements are too general or even non-actionable, it does not defeat the breach of fiduciary duty claim, which is based on negligent **conduct**. ¶¶1, 147-156.

resident defendant is rested or to apply the epitaph 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion ***that the joinder is without right and made in bad faith*** . . . .").  28 U.S.C. §1441(b) provides that an "action shall be removable ***only*** if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  Accordingly, the "removing defendant's burden of demonstrating that the non-diverse defendant's joinder is a 'sham' is a heavy one" and "a lack of clear precedent does not render the joinder fraudulent."  *Archuleta v. Am. Airlines, Inc.*, No. CV 00-1286 MMM (SHx), 2000 U.S. Dist. Lexis 21076, at *16 (C.D. Cal. May 12, 2000).  The court's job is not to determine whether the plaintiff will actually or even probably prevail on the merits of his claim, ***but rather to evaluate whether there is any possibility plaintiff may do so, even through amendment of his complaint***.  *See Cal. Dump Truck*, 24 Fed. Appx. at 730-31 ("Given California's liberal rules on amendment of pleadings, it is very possible that the state court would have granted plaintiffs leave to amend their complaint, allowing them to address the deficiencies the defendant manufacturers assert.").  As such, the only relevant inquiry for purposes of this remand motion is whether plaintiffs can possibly "state a cause of action against a resident defendant" in Alaska State Court.  *Mut. of Omaha*, 134 Fed. Appx. at 195.  Ambiguities as to whether a cognizable claim can be stated must be resolved in plaintiffs' favor and the action must be remanded unless the "***failure is obvious according to the settled rules of the state***" of Alaska.  *Id.*; *see also Alaska Airlines*, 902 F.2d at 1402; *Union Pac.*, 282 F. Supp. 2d at 1158 (claims must be "obviously meritless").  Even if defendants showed this action was likely to be dismissed as against the purported "sham" defendants, that showing would not meet their burden of establishing fraudulent joinder.  *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 586 (C.D. Cal. 1998).

"Federal district courts are not entitled to determine ***uncertain issues of law*** in order to ascertain whether there has been a fraudulent joinder, as those such issues must be determined in

state court." *Knutson*, 358 F. Supp. 2d at 996. Mere citation of "a single case . . . in [a] different district than the one in which plaintiffs filed" does not fulfill defendants' heavy burden, especially where, as here, "[t]here is no case from the [state's] Supreme Court foreclosing plaintiffs' claims" and no "clear consensus among the [state's] Courts of Appeals" demarking the contours of defendants' duties. *Union Pac.*, 282 F. Supp. 2d at 1159. Just as the Ninth Circuit refused to make a hard and fast determination as to what duty California law would assign to a school district for purposes of determining whether the school district had been fraudulently joined, finding it persuasive that "California courts have been reluctant to set bright line rules restricting the liability of school districts" (*id.*), it is equally clear there is no Alaska law which can even remotely be read to affirmatively state Marshall had no enforceable duty to BP or that an Alaska court would not permit plaintiffs, shareholders of BP p.l.c., to enforce those duties through a shareholder derivative action. Plaintiffs need not "point to any cases in which courts have found [executives equivalent to Marshall] liable for injuries sustained by" the companies they are charged with directing and leading as "plaintiffs do not bear the burden of proving their claims valid[,] [r]ather, the burden rests with defendants to show that plaintiffs' failure to state a claim was 'obvious according to the settled rules of the state.'" *Id.* at 1160.

Finally, "[i]n order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant." *Knutson*, 358 F. Supp. 2d at 993; *see also Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975) (holding that, "[i]nasmuch as appellant's case against the individual defendants was sufficient to withstand a dismissal motion under Fed. R. Civ. P. 12(b)(6), the joinder of claims against them was not fraudulent so as to warrant dismissal on that score").

## 2. Defendants Cannot Prove by Clear and Convincing Evidence that Plaintiffs Cannot State a Potentially Valid Claim Against Defendants Marshall, McCleary or Phillips

Defendants claim the Court should not consider the Alaska citizenship of Marshall, McCleary and Phillips to defeat diversity jurisdiction because plaintiffs will not be able to establish their liability for any of the misconduct alleged in the Complaint – claiming : (i) English law governs this action, (ii) English law does not permit recovery for damage occurring at an operating subsidiary through derivative actions, and (iii) English law would not permit plaintiffs to sue an operating subsidiary's executives derivatively. Def's Not. ¶¶6, 7. This claim, however, is not dispositive. English law may not govern. But, even if it does, the non-existence of this cause of action in English law is not at all clear.

Due to BP's pervasive presence in Alaska and BPX's incorporation in Delaware, Alaska's conflict of law rules may permit it to apply its own, rather than English law. But this Court need not – and should not – resolve that esoteric choice of law issue. The law of the potentially relevant jurisdictions, Alaska (where much of the misconduct took place), Delaware (where BPX is incorporated), and England (where BP p.l.c. is incorporated), ***all recognize causes of action for breach of fiduciary duty by corporate managers and directors and they allow such claims to be prosecuted derivatively***.

BP's officers and directors owed fiduciary duties to BP under the laws of Alaska. *See* Alaska Stat. §§10.06.483, 10.06.450; *Martinez*, 113 P.3d at 1228. They also owed fiduciary duties to BP under Delaware law. 8 Del. C. §§141, 142; *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 52 (Del. 2006); *Anadarko Petroleum*, 545 A.2d at 1174. And, they also owed fiduciary duties to BP under English law. *See Abbey Nat'l*, 423 F. Supp. at 364 ("under English law directors owe duties to the companies" and a "shareholder may assert . . . a derivative claim for breach of fiduciary duty on behalf of the corporation"); *Polar Int'l*, 187 F.R.D. at 116 (same); Chivers Report at 5, ¶16 ("It is

clearly established as a matter of English law that, as a general rule, officers and directors of a company owe fiduciary duties to the company . . . ."). All three jurisdictions permit shareholders to enforce these rights through derivative actions. *See* Alaska Stat. §10.06.435; *Walt Disney*, 906 A.2d at 52; *Abbey Nat'l*, 423 F. Supp. 2d at 364. As such, for purposes of this motion, plaintiffs have potentially stated a valid cause of action for breach of fiduciary duty against Marshall, McCleary and Phillips that can be prosecuted in Alaska State Court, regardless of what law that court ultimately applies.

### a. This Inquiry Ends Once It Is Determined Plaintiffs Have Stated a "Potentially Valid Claim" Against Any Alaska Defendant

Defendants' attempt to prove fraudulent joinder by having this Court decide what "governing English law" is, that it applies and that under it plaintiff cannot "possibly maintain this derivative action" should be rejected. Def's Not. ¶7. The only relevant inquiry for purposes of this remand motion is whether plaintiff can ***potentially*** "state a cause of action against a resident defendant" in Alaska State Court. *Mut. of Omaha*, 134 Fed. Appx. at 195. Ambiguities as to whether a cognizable claim has been stated must be resolved in plaintiffs' favor and the action must be remanded unless the "***failure is obvious according to the settled rules of the state***" of Alaska. *Id*.; *see also Alaska Airlines*, 902 F.2d at 1402. In *Nemazee v. Premier, Inc.*, 232 F. Supp. 2d 172 (S.D.N.Y. 2002), the court faced a similar issue on a remand motion calling for it to decipher the boundaries of New York state corporate law in a derivative action when a claim of fraudulent joinder was used to remove that case:

> ***For purposes of the instant remand motion***, the Court need not find that demand would have been futile. The Court makes no determination as to this question, other than holding that such a finding is possible. By so holding, defendants' claim of fraudulent joinder fails and this Court is deprived of subject matter jurisdiction over the action. ***The question of whether, in fact, demand would have been futile should be determined by the New York State Supreme Court***.

*Id*. at 181.

Similarly, *for the purposes of this remand motion*, this Court is neither required nor permitted to guess whether or how *an Alaska court* would apply Alaska, Delaware or English law to determine defendants' liability under the fact-intensive "more significant relationship" test advanced in the Restatement (Second) of Conflicts of Laws §§302, 309 (1971).[18] There is no Alaska Supreme Court decision on point or "clear consensus" among Alaska appellate courts, so the case should be remanded to the Alaska State Court to decide. *Union Pac.*, 282 F. Supp. 2d at 1158; *see also S. Pac.*, 187 F.2d at 402 ("The necessity of establishing in the complaints the relationship of the defendants . . . is at best a doubtful question of state law which should be tried in the state court and not determined in removal proceedings.").

Finally, as the face of the Complaint avers that despite BP's organization under the law of England, plaintiffs' claims are brought pursuant to Alaska law, *for purposes of this motion* the Court should constrain its review to whether plaintiff has stated a claim that is *potentially valid* in Alaska State Court. *See Pullman*, 305 U.S. at 537; ¶24. Because, as demonstrated below, plaintiffs have clearly stated a "potentially valid claim against . . . non-diverse defendant[s]" Marshall, McCleary and Phillips, the Court's inquiry is complete and this case must be remanded. *Knutson*, 358 F. Supp. 2d at 993.

---

[18]     Alaska "look[s] to the Restatement (Second) of Conflict of Laws for guidance in resolving choice-of-law issues" where there is no Alaska law directly on point. *Savage Arms v. W. Auto Supply Co.*, 18 P.3d 49, 53 (Alaska 2001); *see also Palmer G. Lewis Co. v. ARCO Chem. Co.*, 904 P.2d 1221, 1227 (Alaska 1995) (same). Under the Second Restatement test, "'[a] court . . . conducts a separate choice-of-law analysis for each issue in a case, attempting to determine which state has the most significant contacts with that issue.'" *Savage Arms*, 18 P.3d at 53 (quoting *Ruiz v. Blentech Corp.*, 89 F.3d 320, 324 (7th Cir. 1996)). The inquiry is necessarily fact-intensive.

### b.   Plaintiffs Have Stated a "Potentially Valid Claim" Under the Law of Whichever Jurisdiction Is Ultimately Applied

Alaska adheres to the modern approach to conflicts of law analysis and applies a "most significant interest" analysis to ***true*** conflicts of law. *Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430, 433-34 (Alaska 2001). *See also Savage Arms*, 18 P.3d at 53; Restatement (Second) of Conflicts of Laws §145 (1971) ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ."); *Scudder v. Int'l Air Serv. Co.*, No. 97-35445, 1998 U.S. App. LEXIS 21622, at *5 n.1 (9th Cir. Sept. 1, 1998) (applying Alaska law because Alaska had the "most significant relationship to the parties" and the alleged misconduct); *Roundtree v. Ching Feng Blinds Indus. Co., Ltd.*, 393 F. Supp. 2d 942, 945 (D. Alaska 2005) (holding that "Alaska courts have adopted the choice-of-law rules set forth in the Restatement (Second) of Conflict of Laws" and applying §145's factors, ruling that Alaska law would apply to a tort action because Alaska was the "center of the relationship between the parties" and ruling that the fact that the relevant company's incorporation was "outside of Alaska," in Taiwan, was an "insignificant [fact] in light of Alaska's contacts with this case and its interest in the safety . . . within its borders").  Marshall, McCleary and Phillips were all officers and/or directors of BPX, a Delaware corporation headquartered in Alaska.  Because: (i) their breaches occurred in Alaska; (ii) the case was filed in Alaska; (iii) as defendants have described and asked this Court to apply it, application of English law would "offend a fundamental policy of Alaska"; and (iv) the case "raises fundamental policy issues that are materially more interesting to Alaska," it is more likely than not that "Alaska law applies." *Holland Am.*, 26 P.3d at 431-33.

Federal courts "apply the choice of law rules" of the state in which the district court is located to determine which state's substantive law governs. *Alaska Airlines*, 902 F.2d at 1402; *see*

*also W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 873 (5th Cir. 1990) (district courts are required to apply the law of the states in which they sit, rather than federal law, to any conflict of law analysis). However, the Ninth Circuit requires a predicate inquiry into whether a ***true*** conflict of law actually exists before resorting to a full conflict of law analysis. *See In re Simon*, 153 F.3d 991, 999 (9th Cir. 1998). Accordingly, "general principles of international comity [are] limited to cases in which '"there is in fact a true conflict between domestic and foreign law."'" *Id.*

As detailed below, there is no ***true*** conflict of law issue which must be decided for purposes of this remand motion. The laws of Alaska, the United Kingdom and Delaware are all in accord on the issue of whether defendants Marshall, McCleary and Phillips owed fiduciary duties as officers and/or directors of BPX and whether those duties may be enforced derivatively. Moreover, while there may be nuances differing in the law of these three jurisdictions, because none of the three jurisdictions have decisions directly on point, this case should be remanded to the Alaska State Court for adjudication of these issues. *See Union Pac.*, 282 F. Supp. 2d at 1158; *S. Pac.*, 187 F.2d at 402.

Allegations of breach of fiduciary duty are traditional state law claims. They are governed either by the law of the jurisdiction of incorporation or the law of the forum of the derivative action depending on which "state has a more significant relationship to the occurrence and the parties." Restatement (Second) of Conflicts of Laws §302 (1971). In *Holland America*, the Alaska Supreme Court reversed a lower court that applied another state's law to a tort action brought in Alaska state court holding that "[w]hen deciding choice of law issues, [the Alaska Supreme Court has] in the past turned to the Restatement (Second) of Conflict of Laws (Restatement) for guidance," and ***where*** ***"Alaska has a materially greater interest in the issue***[,] the application of [another state's] law would offend a fundamental policy of Alaska," the underlying conduct occurred in Alaska, and the case "raises fundamental policy issues that are materially more interesting to Alaska . . . , Alaska law applies":

> *[S]trong is Alaska's interest in providing victims of negligence who sustain personal injuries within the state access to a legal system that affords them a fair opportunity to seek redress from the negligent party.  So too is Alaska's interest in promoting public safety by deterring future negligent conduct within the state.  In contrast, the State of Washington's only interest in the issue at hand is in protecting resident corporations' contract rights relating to torts that they commit in other states.   While this interest is certainly not insubstantial, we find it decidedly weaker than Alaska's interests. We hold, then, that Alaska's interests are materially greater than Washington's.*

26 P.3d at 431-34.

The Complaint alleges, and it must be accepted as true for this motion, that "due to BP's extensive U.S. and Alaska operations, the large number of BP shareholders in the U.S., the locus of the wrongdoing, and the interests of the U.S. and Alaska impacted by that conduct under the local law exception to the internal affairs clause, the laws of Alaska . . . *may be applied to permit this action to be maintained*."  ¶24.

Moreover, even if the Alaska courts do have to apply the law of some foreign jurisdiction to determine the merits of plaintiffs' claims, this is no bar to its jurisdiction.  The Alaska Corporations Code, including those sections delineating shareholder derivative actions, apply on their face to corporations domiciled outside of Alaska, *i.e.*, corporations which are "*foreign*," but have significant operations here.  This action is expressly contemplated by the Alaska Corporations Code:

Shareholders' derivative action

> (a) *An action may be brought in the right of a domestic or foreign corporation* to procure a judgment in its favor by a holder of shares of the corporation, of voting trust certificates of the corporation, or of a beneficial interest in shares of the corporation.

Alaska Stat. §10.06.435.

Status of foreign corporation

> A foreign corporation . . . enjoys . . . the same, but no greater, rights and privileges as a domestic corporation . . . and . . . *is subject to the duties, restrictions, penalties, and liabilities* now or hereafter imposed upon a domestic corporation of like character.

Alaska Stat. §10.06.740.

While Alaska courts may review the analysis employed by courts in other jurisdictions, including Delaware and England, the Alaska Supreme Court has rejected adopting interpretations that contradict Alaska's own Corporate Statutes as those statutes "*were not modeled after a specific state provision or model code*." *Jerue*, 66 P.3d at 746. The trial courts in Alaska are required to apply the "***plain text***" of the Alaska Corporate Statutes as written, including their application to "foreign corporations." *Id.*; *see also Stephens v. Nat'l Distillers & Chem. Corp.*, No. 91 Civ. 2901 (JSM), 1996 U.S. Dist. LEXIS 6915, at *14 (S.D.N.Y. May 21, 1996) (construing a similar New York corporate law statute to mean that "[w]hen a foreign corporation comes into New York State and transacts its business there, it must yield obedience to its laws" and ***applying New York law to breach of fiduciary duty claims brought against a Kentucky corporation***). Of course, Alaska courts do use a "sliding scale" approach to examining the legislative intent of a statute whose "plain text" is bereft of clear meaning, but the Alaska Supreme Court has held that the "plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be." *Muller v. BP Exploration (Alaska)*, 923 P.2d 783, 788 (Alaska 1996). For purposes of this remand motion, application of the Alaska Corporate Statutes to "foreign corporations" is not ambiguous or bereft of meaning. These words cannot be read out of the statute. *See State v. Jack*, 125 P.3d 311, 316 (Alaska 2005) (reversible error to read limitations which do not appear on the face of the statute where it limits the court's jurisdiction); *N. Supply v. Curtiss-Wright Corp.*, 397 P.2d 1013, 1016 (Alaska 1965) ("We believe it was not the intent of the legislature that . . . our residents should be compelled to go into foreign jurisdictions to vindicate rights arising out of business transacted by a foreign corporation in the state . . . ."); *cf.* Alaska Stat. §10.05.825(8) (demonstrating the Alaska Legislature intentionally and expressly excluded application to a "foreign corporation" from other sections of the Alaska Corporations Statutes).

*Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255 (2d Cir. 1984), is instructive. There, defendants invoked Panamanian law – the nominal defendant's state of incorporation. It would have required the plaintiffs to have shareholders pass a pre-filing resolution authorizing the derivative action. New York law permitted the shareholder action without the resolution . ***The Court held that because a New York resident brought its action in New York instead of Panama, the New York derivative statute applied***. The court explained it "need not discuss the fidelity of New York courts to the internal affairs rule at this juncture . . . because the New York legislature has expressly decided to apply certain provisions of the state's business law to any corporation doing business in the state, regardless of its domicile." *Id.* at 261 (applying N.Y. Bus. Corp. Law §1319(a), which, like the Alaska statute, explicitly states that N.Y. Bus. Corp. Law §626, New York's shareholder derivative statute, applies to "a foreign corporation doing business in this state"). Of particular significance to the *Norlin* court was its finding that, like here, any conflict between the laws of the state of incorporation and the laws of the forum was "purely illusory." *Id.* at 264.[19]

The same result should obtain here. At least it should cause this Court to conclude plaintiff has stated a "potentially" valid claim against the Alaska defendants. Like the New York statute in *Norlin*, the Alaska derivative statute applies to "foreign corporation[s]" like BP doing business in

_____

[19]     *See also Mayflower Hotel Stockholders Protective Comm. v. Mayflower Hotel Corp.*, 193 F.2d 666, 669 (D.C. Cir. 1951) (where the fiduciary duties required of the of the law of the forum and the law of the state of incorporation were in substantial accord there was no error in applying the law of the forum); *Mansfield Hardwood Lumber Co. v. Johnson*, 268 F.2d 317, 320-21 (5th Cir. 1959) (automatic reference to the law of the state of incorporation is rejected); *Drenis v. Haligiannis*, No. 04 Civ. 9263 (RJH), 2006 U.S. Dist. LEXIS 68488, at *19 (S.D.N.Y. Sept. 25, 2006) (applying the corporate law of the forum rather than the state of incorporation where the "alleged torts largely occurred in" the forum, "all plaintiffs and the vast majority of the . . . defendants [were] domiciled in" the forum and "considering the strong interest [the forum state] has in seeing its law applied when one of its domiciliaries alleges it has been defrauded"); *Polar Int'l*, 187 F.R.D. at 116 & n.6 (same); *Stephens*, 1996 U.S. Dist. LEXIS 6915, at *14 (applying New York law to breach of fiduciary duty claim against Kentucky corporation because a "foreign corporation [that] comes into New York State and transacts its business there . . . must yield obedience to its laws").

Alaska.  Alaska Stat. §10.06.435; *see also* Alaska Stat. §10.06.740 (mandating that corporations doing business in Alaska be subject to its laws).  Thus, for purposes of this motion, the Court must conclude plaintiffs may be permitted to maintain this action under Alaska law.

Alaska law provides for liability for negligent breach of fiduciary duty.  Pursuant to Alaska Stat. §10.06.483(e), each BPX officer was charged with "perform[ing] the duties of the office in good faith and with that degree of care, including reasonable inquiry, that an ordinarily prudent person in a like position would use under similar circumstances."  Moreover, under Alaska Stat. §10.06.450(b), which governs the conduct of directors of foreign and domestic corporations alike operating in Alaska, Marshall was also charged with "perform[ing] the duties of a director . . . in good faith, in a manner [he] reasonably believe[d] to be in the best interests of the corporation, and with the care, including reasonable inquiry, that an ordinarily prudent person in a like position would use under similar circumstances."  On its face Alaska Stat. §10.06.450(b) applies to any director of BPX, "a director of a foreign corporation having its principal executive office in this state."  On its face, Alaska Stat. §10.06.450 also governed the conduct of the directors of BP and BPX, as a "***corporation or a domestic or foreign subsidiary of the corporation***."  The Editors Notes to Alaska Stat. §10.06.450 state the section applies to all "foreign corporation[s] that [are] authorized to do or do[] business in the state on or after July 1, 1989" and to all "actions by a director, officer, or shareholder of [such] a corporation [that took place] on and after July 1, 1989."

The case law in Alaska confirms these duties.  "A corporate officer or director stands in a fiduciary relationship to his corporation.  Out of this relationship arises the duty of reasonably protecting the interests of the corporation."  *Alvest, Inc. v. Superior Oil Corp.*, 398 P.2d 213, 215 (Alaska 1965); *see also Meidinger v. Koniag, Inc.*, 31 P.3d 77, 87 (Alaska 2001) ("Directors, officers, and possibly controlling shareholders, owe fiduciary duties to their corporation and possibly to other shareholders.").  This fiduciary relationship requires the person "to act in good faith and

with due regard to the interests of the one imposing the confidence." *Paskvan v. Mesich*, 455 P.2d 229, 232 (Alaska 1969).

Fiduciary duties of officers and directors are rigorously enforced in Alaska. For instance, just last June 2005 the Alaska Supreme Court upheld a jury verdict and order barring a former chairman of a board from serving on any other board of directors for 15 years after finding him guilty of "breach of fiduciary duties," "negligent mismanagement," "'engag[ing] in fraudulent or dishonest acts, gross neglect of duty and gross abuse of authority or discretion.'" *Martinez*, 113 P.3d at 1228-29. That former chairman's wrong: removing six jackets worth $1,200 from the corporation's retail store without paying for them. *Id.* Defendants Marshall's, McCleary's and Phillips' wrongs alleged on the face of the Complaint: carrying out a "'corporate scandal that parallels the financial machinations that brought down Enron Corp.'" that has "exposed BP to tens of millions of dollars in damages, potentially hundreds of millions of dollars in remedial costs and badly damaged BP's corporate image and reputation." ¶¶5, 6.

A review of the law of other potentially relevant jurisdictions also confirms the Alaska defendants' duties ran not only to BPX, but to BP p.l.c., its English parent. For instance, under Delaware law, "in a parent and wholly-owned subsidiary context, ***the directors of the subsidiary are obligated . . . to manage the affairs of the subsidiary in the best interests of the parent and its shareholders***." *Anadarko Petroleum*, 545 A.2d at 1174; *see also Aviall, Inc. v. Ryder Sys.*, 913 F. Supp. 826, 832 (S.D.N.Y. 1996), *aff'd*, 110 F.3d 892 (2d Cir. 1997) ("When one company wholly owns another, ***the directors of the parent and the subsidiary are obligated to manage the affairs of the subsidiary in the best interests only of the parent and its shareholders***."). In fact, it is recognized consistently around the country that a derivative action can be maintained by shareholders of a parent corporation against the officers and directors of the operating subsidiaries of the parent for harm done to both the subsidiary and the parent as "the director or officer of a

subsidiary owes a common law fiduciary duty to the parent corporation." *Laduca v. Swirsky*, No. 02 C 8597, 2003 U.S. Dist. LEXIS 12823, at *12 (N.D. Ill. July 24, 2003) (holding a shareholder in the parent had standing to sue the officers and directors of the subsidiary derivatively through plaintiff's shareholdings in the parent).[20]

The law of England appears in accord. Where the parent corporation controls its operating subsidiaries, a derivative action against the executives and directors of the operating subsidiary on behalf of the shareholders of the parent lies. *See generally* Companies Act, 1985, c. 6 §258 (Eng.) (discussing different legal treatment of operating subsidiaries under English law where the parent "exercise[s] a dominant influence over the [subsidiary] . . . by virtue of a control") & Companies Act, 1989, c. 40 §144 (Eng.) (defining "wholly-owned subsidiar[ies]" under English law); *Partco Group*, [2002] EWCA (Civ) 594, ¶48 (affirming lower court decision denying motion to dismiss in action by a parent corporation against officers and directors of a subsidiary for negligent breaches of the duty of care noting "it is not appropriate to strike out a claim in an area of developing jurisprudence, in which a decision as to a novel point of law should be based on actual findings of fact, and that a statement of case is not suitable for striking out if it raises a serious live issue of fact which can only properly be determined by hearing oral evidence") (Blasy Aff., Ex. B).

The specifics of BP's corporate structure are disregarded for purposes of this analysis as these operating subsidiaries are dominated by and are thus the mere instrumentalities of BP p.l.c., their ultimate sole shareholder. *See Nerox Power Sys. v. M-B Contracting Co.*, 54 P.3d 791, 801-02 (Alaska 2002); *see also Greene King plc v. Harlow Dist. Council*, [2003] EWHC (Admin) 2852

---

[20]     Similarly, claims by bankruptcy trustees to parent corporations against the officers and directors of subsidiary corporations for harm to the subsidiary are cognizable, and arguments that the trustee "lacks standing" to pursue a derivative remedy against the subsidiaries' officers and directors through the bankruptcy estate are "rejected." *In re Scott Acquisition Corp.*, 344 B.R. 283, 291 (Bankr. D. Del. 2006).

(Eng.) (disregarding a complex structure of holding companies and operating subsidiaries for purposes of assigning criminal liability for the operating subsidiary's violations of public health and safety laws) (Blasy Aff., Ex. E). Where, as here, BP p.l.c.: (i) "owns all or most of the stock" of BPX and the other operating subsidiaries, (ii) "subscribed to all of the capital stock or caused the incorporation" of BPX, (iii) BP p.l.c. "uses the property" of BPX for its "own benefit," and (iv) BPX's directors do not "act independently of" BP p.l.c., BPX is deemed a "mere instrumentality" of BP p.l.c. for purposes of this derivative action and plaintiffs have stated a cause of action against its faithless fiduciaries.[21] *Nerox Power*, 54 P.3d at 801-02; *see also* BP's Corporate Disclosure Statement (Docket #16).

Defendants' citation to *Batchelder v. Nobuhiko Kawamoto*, 147 F.3d 915 (9th Cir. 1998), for the rigid rule of Japanese law that because "[b]ecause plaintiffs seek to sue derivatively on behalf of BP p.l.c., their standing to assert derivative claims is governed by English law" for purposes of this removal petition is misleading. Def's Not. ¶7. *Batchelder* holds nothing of the sort. ***Batchelder is a decision on a motion on pleadings where federal subject matter jurisdiction had already been established! Conversely, this Court's decision is strictly limited to determining whether Alaska would potentially permit any permeation of plaintiffs' action to go forward against the in-state defendants and, as such, is prohibited from making the very merits determinations the Batchelder case made***. Moreover, *Batchelder* is inapposite: (i) the *Batchelder* plaintiff's stock was held solely in the form of ADRs governed by an ADR agreement that ***expressly stated*** any shareholder action

---

[21]     As BPX is in no way a separate entity from BP p.l.c., the two, and their intermediate corporate entities, are "merged" for purposes of liability in this derivative action. As discussed by professors Brilmayer & Paisley in their seminal piece delineating liability in derivative cases: "If merger is shown . . . all of the activities of the subsidiary are by definition activities of the parent [and] there is no separate legal entity at all." Lea Brilmayer & Kathleen Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency*, 74 Cal. L. Rev. 1, 12 (1986). Thus, plaintiffs' claims against BPX's officers and directors for damage to BPX are in essence cognizable by the shareholders of BP because the harm has been done to BP.

was governed by Japanese law; (ii) Japanese law conclusively stated Batchelder was not a shareholder of the parent and lacked standing to bring a derivative action on behalf of the operating subsidiary; and (iii) Japanese law specifically precluded "double derivative" actions and actions against third parties. *Batchelder*, 147 F.3d at 917. The arcane corporate law of Japan is not at issue in this case.

Conversely, as held by another court, ***applying U.S. law***, in "Ohio and ***in other jurisdictions[,] [the] shareholders of a parent corporation, by virtue of their ownership interest in the parent, may maintain a 'double derivative' action on behalf of the subsidiary corporation***," and "***under the concept of double derivative actions, plaintiffs' allegations, that . . . they owned [the parent's] stock at the time the transactions complained of occurred, were sufficient to give them standing to maintain [a derivative] action on behalf of [the subsidiary]***." *Carlin v. Brownfield*, No. 84AP-345, 1985 Ohio App. LEXIS 8141, at *9-*10 (Ohio Ct. App. June 18, 1985). As such, whether Alaska, Delaware or English law applies, plaintiffs have stated a potentially valid cause of action for breach of fiduciary duties against the Alaska Defendants. Thus, there was no fraudulent joinder.

### c. The Complaint Alleges a Concerted Action Involving All Defendants

Because it is alleged that "[a]ll defendants [including BPX, Marshall, McCleary and Phillips], singularly ***and in concert***, engaged in the [alleged] conduct in intentional breach and/or reckless disregard of their fiduciary duties to the Company," controlling Ninth Circuit authority holds that an attack on the Alaska co-conspirator defendants who performed "necessary" components of the misconduct "wholly fails to show a fraudulent joinder of parties," mandating that the case be "remanded to the state court." *Republic Prods.*, 112 F.2d at 674.

In *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992), a Pennsylvania psychologist filed suit in state court against an automobile insurer as the assignee of a patient's right to payment

for medical expenses. The plaintiff also named as a defendant another psychologist (a Pennsylvania resident), asserting that the psychologist engaged in a conspiracy with the insurer to prevent payment. After the insurer removed the action, the district court rejected the plaintiff's motion to remand for want of diversity jurisdiction. The district court held that the plaintiff had failed to state a claim on the merits against the non-diverse psychologist, and dismissal of that claim resulted in complete diversity between the plaintiff and the insurer. The Third Circuit reversed holding plaintiff's conspiracy claims "presented . . . a 'colorable' claim, even if it ultimately may not withstand a motion to dismiss in the state court." *Id.* at 853-54. *See also Godsey v. Miller*, 9 Fed. Appx. 380, 382 (6th Cir. 2001) ("'the validity of this conspiracy cause of action . . . destroys the complete diversity necessary to remove this suit under 28 U.S.C. §1441'"); *S.A. Auto Lube v. Jiffy Lube Int'l*, 842 F.2d 946, 948 (7th Cir. 1988) ("the complaint did state a claim of civil conspiracy against JL-Illinois and the other defendants, and . . . therefore JL-Illinois was not fraudulently joined"); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 554 (5th Cir. 1981) (finding that if the in-state defendants "could be shown to have conspired with" other defendants, "they too might have incurred liability," so "the joinder of one or more of the in-state defendants was not fraudulent").

Defendants cannot meet their heavy burden of demonstrating, as a matter of law, defendants such as Marshall, BPX's President who plainly conceded his complicity to Congress on 8/17/06 (¶151: "***I deeply regret this situation occurring on my watch***"), or BPX's two Vice Presidents, were improperly joined to defeat diversity jurisdiction in light of the Complaint's detailed allegations that they engaged in concerted action with the other defendants to violate their duties to oversee BP's operations in Alaska.

### d. Though Not Required, Plaintiffs Could Plead Double, Triple or Quadruple Derivative Claims

If plaintiffs needed to they could (though it is not necessary as addressed above), replead to explicitly state double, triple and quadruple derivative claims against certain defendants, which,

while unusual, are not unique. Double, triple and quadruple derivative claims are recognized by

courts as a vehicle for permitting shareholders to hold corporate fiduciaries accountable regardless of

the existence of complicated legal structures designed by corporate miscreants to shield themselves:

> If there was no holding company, there would be no subsidiary. The minority shareholder could then bring a single derivative suit without difficulty. *In reality, the holding company here is being used as a shield, when actually it is transparent to the dispute. The real owner of the subsidiary is not the holding company but rather the holding company's shareholders, which includes plaintiff*. Being unjustly blocked by both corporations, the subsidiary and the holding company, plaintiff's only recourse lies in the courts.

> *Regardless of the label attached to the shareholder's suit, i.e., single, double, triple or multiple, it is still derivative in nature and consequently subject to equitable principles*.

*Brown v. Tenney*, 125 Ill. 2d 348, 361 (Ill. 1988).

All directors of the operating subsidiary (BPX) were named as defendants. Their culpability

in allowing BPX – which was already a convicted felon on probation for willfully violating

environmental laws when the alleged misconduct took place – to persistently violate environmental

laws by failing to execute a corrosion and prevention program cannot be disputed. ¶¶19, 57-67, 69,

Att. A, 92, 93, 115. As such, claims against certain defendants named in this action could easily be

repled in the form of a so-called double, triple or quadruple derivative action. Thus, defendants

cannot meet their burden of demonstrating fraudulent joinder by establishing "there is no possibility

that [plaintiffs] could state a claim," including if "leave to amend their complaint" was granted

"allowing them to address the deficiencies the defendant . . . asserted." *Cal. Dump Truck*, 24 Fed.

Appx. at 729-30.

As such, it is impossible for a court to rule as a matter of law at this point that allegations

asserting these claims for relief are ***fraudulent***. Thus, no matter how one slices or dices the parties,

the claims asserted or the law to be applied to these claims, for the purposes of this motion, diversity

is not present, federal jurisdiction is lacking and this action must be remanded.

3.     **Defendants' Removal Improperly Attempts to Put at Issue the Ultimate Liability of All Defendants in Violation of the "Common Defense" Rule**

Defendants' claim that this Court should determine as a matter of law that "plaintiffs cannot assert derivative claims on behalf of or against these defendants under governing English law" (Def's Not. ¶7) fails to establish fraudulent joinder of the Alaska defendants because this claim *presents a single defense that applies commonly to all defendants, i.e., that a cause of action may not be stated derivatively against BP executives and directors.*

Defendants are prohibited from demanding resolution of ultimate issues that would resolve *an entire action against all defendants* under the pretext of proving "fraudulent joinder" of some defendants. *See, e.g., Cockrell*, 232 U.S. at 151-53; *S. Pac.*, 187 F.2d at 400 ("if joint liability appears from the ultimate facts pleaded in the complaint, appellant's motive in joining the individual defendant is not fraudulent even if the sole reason for joinder is [to] prevent removal"); *see also Smallwood*, 385 F.3d at 571 ("when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant" and "[i]n such a situation, the entire suit must be remanded to state court"). Here, "the reach of [English shareholder derivative law] arises outside of 'an examination of plaintiff's case' and looks instead to Defendants' substantive defenses to that case," mandating remand of this action back to Alaska State Court. *King v. Aventis Pasteur, Inc.*, 210 F. Supp. 2d 1201, 1211 (D. Or. 2002).

Shareholders derivative suits can encompass: (i) claims against directors, executives and third parties for harming the company; and/or (ii) claims against the board of directors for failing to pursue those claims. *See* 1 Moore, *supra*, §2.04. As such, this Court's determination that plaintiffs cannot assert derivative claims on behalf of or against Marshall, McCleary and Phillips as a matter of law would improperly dispose of the allegations against all defendants, including: (i) the non-BP

p.l.c. board member defendants sued for the underlying misconduct that damaged BP (Miles, Wilson, Nicholson, Knight, Maljers, Olver, Chase, Buchanan, Ford, Malone, Pillari, Plumb, Dowling, Springett, Pinkert, Clayton, Graham, Presley, and Woollam); and (ii) all BP p.l.c. director defendants sued both for failing to pursue these claims on behalf of BP and for their own primary liability in failing to prevent the misconduct (Sutherland, Browne, Prosser, Grote, Hayward, Manzoni, Allen, Conn, Bryan, Davis, Massey, Julius, McKillop, Burgmans, Flint, and Castell). ¶¶30-67. *No defendant would be left standing.*

The Supreme Court in *Cockrell* rejected this very result. Specifically, the *Cockrell* court held fraudulent joinder does not exist when an argument offered to prove fraudulent joinder of non-diverse defendants simultaneously shows that no case could be pleaded against the diverse defendants:

> Putting out of view, as must be done, the epithets and mere legal conclusions in the petition for removal, [defendant C&O's petition] may have disclosed an absence of good faith on the part of the plaintiff in bringing the action at all, but it did not show a fraudulent joinder of the engineer and fireman. With the allegation that they were operating the train which did the injury standing unchallenged, *the showing amounted to nothing more than a traverse of the charges of negligence . . . . As no negligent act or omission personal to the railway company was charged and its liability, like that of the two employees, was, in effect, predicated upon the alleged negligence of the latter, the showing manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants*. Plainly, this was not such a showing as to engender or compel the conclusion that the two employees were wrongfully brought into a controversy which did not concern them. As they admittedly were in charge of the movement of the train and their negligence was apparently the principal matter in dispute, the plaintiff had the same right, under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company.

232 U.S. at 153. Notably, as is alleged in the instant action, the in-state *Cockrell* defendants claimed to be "fraudulently joined" were the primary actors in the alleged wrongdoing and the other defendants' liability was in large part derivative of those in-state defendants' liability.

In *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108 (3d Cir. 1990), the court applied the *Cockrell* "no common defense rule" to reject a finding of fraudulent joinder where the common defense concerned the validity of a release, holding it involved "identical legal and factual issues applicable to the individual defendants." *Id.* at 113. Applying *Cockrell,* the *Snap-On Tools* court held that "where there are **colorable claims or defenses asserted against or by diverse and non-diverse defendants alike**, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Instead, that is a merits determination which must be made by the state court." *Id.* The *Snap-On Tools* court characterized *Cockrell* **as forbidding a "district court, in the guise of deciding whether the joinder was fraudulent, [from] stepp[ing] from the threshold jurisdictional issue into a decision on the merits**." *Id.* at 112.

Defendants are familiar with the so-called "common defense rule." In fact, they actually cite the Ninth Circuit's *Upjohn* decision (*Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998)) as support in their removal petition. Def's Not. ¶6. Defendants will undoubtedly attempt to argue the *Cockrell/Southern Pacific* "common defense rule" either does not apply or was abrogated by the Ninth Circuit in *Upjohn.* Not true. *Upjohn* discussed the "common defense" rule and then, at first blush, appears to have disregarded it, finding plaintiff's action against the in-state defendants barred by the obviously common defense of statute of limitations, though with no real analysis. 139 F.3d at 1320. However, closer examination reveals the *Upjohn* result was decided for other reasons and is limited to its unique facts.

The *Upjohn* plaintiff was a convicted felon who claimed the drug company failed to adequately disclose side-effects of a drug he claimed caused him to act criminally. *Id.* at 1315. His first suit against Upjohn was dismissed in the district court in 1993 holding the statute of limitations barred the action. *Id.* While his appeal was pending, in 1994 the plaintiff filed a second action in state court naming the purportedly "fraudulently joined" defendants, two in-state doctors plaintiff

claimed helped Upjohn conceal the side-effects. *Id.* Following removal of the second action and the

district court's dismissal for ***again*** violating the statute of limitations, the Ninth Circuit upheld the

second dismissal with prejudice, finding the same claims now raised against the in-state defendants

were ***still*** defective. *Id.* at 1320. The court's decision in *Upjohn* is better explained as affirming the

doctrine of *res judicata* rather than abrogating the "common defense" rule:

> Upjohn faced Ritchey once before in the federal courts and won the day. It
> now finds itself sued, along with others, ***in an action that appears to be the same***
> ***essential claim as the one it faced before. Having prevailed in the first action in***
> ***federal court, it understandably does not wish to struggle with Ritchey in another***
> ***forum, even if the struggle turns out to be a short one***.

139 F.3d at 1320. *Accord Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1170 n.9

(N.D. Cal. 2003) ("The [*Upjohn*] court seemed particularly concerned that plaintiff was ***forum***

***shopping in order to avoid the Circuit's earlier decision***."); *Smallwood v. Ill. Cent. R.R.*, 342 F.3d

400, 407 (5th Cir. 2003) (rejecting the *Upjohn* result and noting the Ninth Circuit "acknowledged the

awkwardness of applying a common defense to find fraudulent joinder"); *In re New England Mut.*

*Life Ins. Co. Sales Practices Litig.*, 324 F. Supp. 2d 288, 304 (D. Mass. 2004) ("The [*Upjohn*]

opinion . . . does not explore (much less reject) the possibility that the Supreme Court, in *Cockrell*,

adopted the proposition."); *Shadie v. Aventis Pasteur, Inc.*, 254 F. Supp. 2d 509, 519 (M.D. Pa.

2003) ("[*Upjohn*] is not persuasive."); *Davila v. Am. Home Prods. Corp.*, No. EP-03-CA-279(KC),

2004 U.S. Dist. LEXIS 4370, at *13 n.2 (W.D. Tex. Feb. 3, 2004) (comparing *Upjohn* to the Fifth

Circuit's *Smallwood* decision and holding *Upjohn* to be "less tenable"); *Huckaby v. Gans & Smith*

*Ins. Agency, Inc.*, 293 F. Supp. 2d 715, 721 (E.D. Tex. 2003) ("*Smallwood* rejected [*Upjohn*].").

In fact, when the *Upjohn* plaintiff took the case up ***on appeal a third time in 2002***, the court

affirmatively held that the earlier decision it upheld "***also properly dismissed the current action on***

***res judicata grounds***." *Ritchey v. Dement*, 35 Fed. Appx. 647, 648 (9th Cir. 2002). Thus, the

"common defense" removal restriction rule survived the *Upjohn* suit abuse by a convicted felon.

Here, even if the Alaska State Court decided to determine what English law was and to apply it and then determined thereunder plaintiffs could not state a derivative claim against the Alaska defendants, that finding would equally prohibit plaintiffs from bringing this action derivatively against any of the defendants. Thus, the common defense rule requires remand.

### 4. The Removal Was Untimely as It Came After Alaska Defendants Were Served

Defendants concede that their claim of federal jurisdiction is based solely upon complete diversity of citizenship under 28 U.S.C. §1332. Def's Not. at 2. However, there is a major limitation on removal jurisdiction in diversity cases: "[E]ven if complete diversity exists [which it does not in this case], the case may not be removed from state to federal court if any defendant is a citizen of the state in which the action is brought." *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988); *see also* 28 U.S.C. §1441(b). Where a resident defendant is named, even if diversity is present, non-resident defendants must remove *before* that defendant is served. If not, the case may not be removed on diversity grounds by any defendant. *See Hurt v. Dow Chem. Co.*, 963 F.2d 1142, 1145 (8th Cir. 1992); *Republic W. Ins. Co. v. Int'l Ins. Co.*, 765 F. Supp. 628, 629 (N.D. Cal. 1991).

Here, defendants admit that resident defendant Marshall was served on 10/5/06, 19 days before they filed their removal petition. Def's Not. ¶2. As defendant Marshall was properly joined, this fact is fatal to defendants' removal petition and federal subject matter jurisdiction is lacking. Therefore, remand of this action is required.

## V. REMOVAL SERVES NO LOGICAL PURPOSE AS A NEARLY IDENTICAL, NON-REMOVABLE DERIVATIVE ACTION MAKING THE SAME CLAIMS AGAINST THE SAME DEFENDANTS REMAINS PENDING IN, AND WILL BE PROSECUTED IN, ALASKA STATE COURT

The companion *Donnelly/Foreman* Action is pending in Alaska State Court. *See* Blasy Aff., Ex. D. In that action, plaintiff Patricia Foreman is a resident and citizen of Florida. *Id.*, ¶18. The

*Donnelly/Foreman* Action also names three non-diverse defendants – Rodney F. Chase (former BP p.l.c. Deputy CEO and Executive Director), William Douglas Ford (former CEO of BP's Refining & Marketing Division and Executive Director of BP p.l.c.) and Ross Pillari (former BP America President) – who are also citizens and residents of the State of Florida. *Id.*; Def's Not. ¶5. Because the *Donnelly/Foreman* Action is non-removable and will go forward in state court in any event, removal of this action serves no logical purpose.

## VI.     PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS

The order remanding this case to the Alaska State Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). The circumstances in this case warrant such an award.

Where, as here, "removal is . . . improper, the plaintiff is presumptively entitled to an award of fees." *Hart v. Wal-Mart Stores, Inc.*, 360 F.3d 674, 678 (7th Cir. 2004). "The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 125 S. Ct. 704, 711 (2005). "Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Id.* The Court need not find that the defendants acted with an improper purpose or in bad faith in order to award plaintiff the attorneys' fees and costs they incurred in remanding this case to the Alaska Superior Court. *See Moore v. Permanente Med. Group*, 981 F.2d 443, 446 (9th Cir. 1992).

Here, plaintiffs should not be required to bear the cost of remanding this action to their chosen state court forum when the defendants had no basis in fact or law for their removal of this action from the Alaska State Court in the first place, especially, since those defendants were made aware from the face of the Complaint that no diversity jurisdiction existed. ¶18 ("***There is no***

- 49 -

*diversity of citizenship and this case may not be removed to federal court*.").  Because defendants'

removal was undertaken to delay these proceedings, defendants should be forced to bear the cost of

seeking remand.  To require plaintiffs to bear the costs of seeking remand after defendants' improper

removal would be unfair and inequitable.

Finally, the Court need not delay its order remanding this action to award plaintiffs their

attorneys' fees and costs.  Rather, the Court may issue an order immediately remanding this action

while retaining jurisdiction to determine the appropriate amount of an award under 28 U.S.C.

§1447(c).  *See Moore*, 981 F.2d at 448 ("because the award of attorney's fees pursuant to 28 U.S.C.

§1447(c) is collateral to the decision to remand, the district court retain[s] jurisdiction after remand

to entertain Plaintiffs' motion for attorney's fees").

## VII.  CONCLUSION

For the reasons stated, this case should be remanded and plaintiffs should be awarded just

fees and costs.

DATED:  November 22, 2006       Respectfully submitted,

FOSLER LAW GROUP, INC.
JAMES E. FOSLER
Alaska Bar No. 9711055


            s/ JAMES E. FOSLER
_____
           JAMES E. FOSLER

737 West 5th Avenue, Suite 205
Anchorage, AK  99501
Telephone:  907/277-1557
907/277-1657 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
MARY K. BLASY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

CUNEO GILBERT & LaDUCA
JONATHAN W. CUNEO
PAMELA GILBERT
507 C Street, NE
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)

Attorneys for Plaintiffs

S:\CasesSD\BP Derivative\BRF00036322.doc

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ JAMES E. FOSLER
JAMES E. FOSLER

FOSLER LAW GROUP, INC.
JAMES E. FOSLER
Alaska Bar No. 9711055
737 West 5th Avenue, Suite 205
Anchorage, AK 99501
Telephone: 907/277-1557
907/277-1657 (fax)
E-mail: jfosler@foslerlawgroup.com

# Mailing Information for a Case 3:06-cv-00239-RRB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey M. Feldman**
  feldman@frozenlaw.com
  carper@frozenlaw.com;crowe@frozenlaw.com;summers@frozenlaw.com
- **James Edward Fosler**
  jfosler@foslerlawgroup.com
- **Richard C. Pepperman, II**
  peppermanr@sullcrom.com
- **Steven J. Purcell**
  purcells@sullcrom.com
- **James E. Torgerson**
  jim.torgerson@hellerehrman.com
  sonja.amundsen@hellerehrman.com;karen.ponsness@hellerehrman.com
- **John L. Warden**
  wardenj@sullcrom.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jonathan W. Cuneo
Pamela Gilbert
Cuneo Gilbert & LaDuca
507 C Street, NE
Washington, DC 20002
```